Williams v. Hund.

Headnotes 1 and 2:  Executions, 23 C. J. sec. 426.

---

MARY A. WILLIAMS, Administratrix of Estate of
    HENRY LUTZ, v. WILLIAM HUND et al., Appel-
    lants; EFFIE M. LUTZ, Intervening Petitioner.

In Banc, February 11, 1924.

1. **APPEAL: Right of Parties.**  Under the statute (Sec. 1469, R. S.
   1919) any party to a suit aggrieved by the judgment is entitled
   to an appeal unless it is .prohibited by the Constitution.  Bene-
   ficiaries under a will, named as defendants in a suit to have a trus-
   tee appointed to receive the estate and to declare the true intent
   and meaning of the will, who by their answer assert that the
   powers by the will invested in the trustee were personal to him
   and as he refused to act said powers have become inoperative and
   who further assert that the plaintiff by bringing such suit con-
   trary to the inhibitions of the will has forfeited all right to share
   in the estate, have such interest in the litigation as entitles them
   to appeal from a judgment granting the prayer of the petition.

2.  **TRUSTEE:** Discretionary Powers: Revocation: Exercised by Court. Personal discretionary powers invested by a will in a named trustee cannot be exercised by a court, or by another trustee substituted by a court, but can be exercised only by the person in whom such personal confidence is reposed; and if he disclaims, or refuses to exercise, the trust, the power will be considered revoked and annulled.

3.  ———: ———: **Acceptance.** If the trustee has once accepted the office, either expressly or by implication, he cannot afterwards, by disclaimer or renunciation, avoid the duties or responsibilities of his trusteeship; and insistence upon executing the powers invested in him by the will is an acceptance of his appointment as trustee, and vests the title of the estate in him as such trustee. And in this case, the facts demonstrate that the trustee named in the will did accept the appointment.

4.  ———: **Disclaimer: Appointment by Court.** Renunciation of the trust must be unequivocal. Where the named trustee waived the right to act as executor upon the distinct understanding that he would act as trustee and take over and administer the trust, there was no disclaimer; and the powers vested in him being personal and discretionary and having thus accepted the appointment, he could not disclaim the trusteeship, and his subsequent appointment by the circuit court was a nullity.

5.  ———: **Control by Court: Good Faith.** Where the will invests a designated power to be exercised upon a named condition by the named trustee, "who shall be the sole judge thereof," the trustee's discretion must be exercised in good faith, but the court cannot control his exercise of it in the absence of selfish, corrupt or improper motives, and the burden is on the beneficiary to prove such motives, and not upon the trustee to show good reasons for his acts.

6.  **WILL:** Against Public Policy: Inducement to Obtain Divorce. A will directing the trustee to pay to testatrix's son two hundred dollars per month during his lifetime upon condition that he become divorced from his wife, although she is designated therein as "generally known to be a woman not of good character," would be contrary to public policy and the condition void, and the son would take the legacy freed from the illegal condition. But a will which gave the son two hundred dollars per month during life, and provided that said wife after his death should be paid nothing, but if he should be divorced from her and marry another woman of good repute said second wife should, after his death, be paid said sum during her life, offered to the son no inducement to procure a divorce from his then wife, and the condition did not

prevent the payment, after his death, of said sum to a second wife whom he married after the first wife had procured a divorce from him.

7. ———: ———: ———: **Right of Second Wife: Spendthrift Trust.** The testatrix, possessed of a valuable estate, by her will devised it to a trustee and directed him to pay, out of the income, to her only son two hundred dollars per month during his natural life, and if at any time the trustee were satisfied that the son would not squander it he was to be advanced an additional sum of $5000 with which to engage in business, and if the son settled down and showed himself capable of prudent ownership and control of said estate and became a man of sobriety, a good citizen and of good business capacity, the trustee was empowered to convey and settle the whole estate upon the son. The next clause stated that the son was married to a woman "who is generally known to be a woman not of good character" and directed that if she were the wife of the son at his death "no provision is to be made for her and she is to receive nothing," but if the son "should become divorced from her" and "should re-marry and the person whom he then marries is a woman of good repute," then the two hundred dollars per month, after the son's death, was to be paid to her during her natural life; and should the son marry a woman of good reputation and die leaving children by her, then, at their mother's death, the entire estate, excepting certain special legacies, "shall pass to and become the absolute property of such children." Two years after the death of the testatrix the wife to whom the son was married at the time the will was made obtained a divorce from him, and four years later he met and married the intervener, a woman of good repute, and three or four years later died, without having reformed, and leaving no issue. After his death intervener claimed the $200 per month. No evidence was produced tending to show that the possibility that she would finally obtain the legacy thus claimed tended to disrupt the marital relations between the son and his first wife. *Held,* that none of the contemplated benefactions was conditioned on the son's divorcing his first wife, and to construe the will as an inducement to him to procure a divorce from her would be to pervert its language.

8. ———: **Avoidance by Suit: Effect on Other Legatee.** Where the will gave two hundred dollars a month to testatrix's son and on his death the same amount to his surviving wife, and contained a clause avoiding any gifts or bequests to the son if he should directly or indirectly contest the will by suit, such a suit begun by him cannot avoid the gift to the wife who survived him, for her legacy was a gift to her, and not to him.

Appeal from Buchanan Circuit Court.—*Hon. L. A. Vories,* Judge.

AFFIRMED.

*Morrison, Nugent & Wylder* and *Mytton & Parkinson* for appellants.

(1) The discretionary powers attempted to be conferred by the will upon Schneider, being personal to him, became extinct when he refused to act as trustee under the will, and could not thereafter be exercised by Schneider, or by any court, or by any substituted trustee. Jones v. Jones, 223 Mo. 424; Perry on Trusts (5 Ed.) sec. 273, p. 409; Hinson v. Williamson, 74 Ala. 180; Belote v. White, 2 Head (Tenn.) 703; Whitaker v. McDowell, 82 Conn. 195; Young v. Young, 97 N. C. 173; 31 Cyc. 1101; 40 Cyc. 1768; Hall v. Harvey, 77 N. H. 82; Chandler v. Chandler, 111 Miss. 525; Ames v. Scudder, 11 Mo. App. 168; Turnure v. Turnure, 104 Atl. (N. J.) 293; Kerens v. St. Louis U. Tr. Co., 223 S. W. 645. (2) Respondent has not and never can have any interest in this estate. Her rights are contingent upon a condition precedent which has become impossible of performance. Underhill on Law of Wills, sec. 486, p. 644; Id. sec. 479, p. 637; Kerens v. St. Louis U. Tr. Co., 223 S. W. 648; Cassen v. Kennedy, 147 Ill. 660; Merrill v. Wisconsin Female College, 74 Wis. 415; Johnson v. Warren, 74 Mich. 491; 2 Redfield on Law of Wills (4 Ed.) p. 284. (3) The estate of respondent being based upon an illegal condition precedent, cannot vest, for the condition being void, it cannot take effect, and the estate falls with it. Snorgrass v. Thomas, 166 Mo. App. 611; Witherspoon v. Brokaw, 85 Mo. App. 173; 2 Redfield on Law of Wills (4 Ed.) p. 284. (4) Whatever rights respondent has, come through her marriage to Henry Lutz, and are tainted with and destroyed by his persuading Schneider to refuse to act as trustee and the bringing of this action. Cases under Point 1. (5) Even if Schnei-

der could still determine whether Effie Lutz was a woman of good repute, still his report does not show a compliance with the condition precedent in the will that he should be of the opinion that she was a woman of good repute, and on the contrary shows that he neither formed nor expressed such an opinion. The will required such an opinion as contradistinguished from any presumption of law. McPike v. McPike, 181 S. W. 2. And the affirmative opinion of the trustee was a condition precedent to any right of the intervener to the annuity in question. Kerens v. Union Tr. Co., 223 S. W. 645; Jarboe v. Hey, 122 Mo. 341; Markham v. Hufford, 123 Mich. 505, 81 Am. St. 222; Webster v. Morris, 66 Wis. 366, 57 Am. Rep. 278.

*Culver, Philip & Voorhees* for respondent.

(1) Schneider never refused to act as trustee. The fact that, pursuant to an agreement, he declined to act both as executor and trustee, was not a refusal to act solely as trustee, especially when he was appointed trustee simultaneously with his declination to act both as executor and trustee. (a) He could accept one office and decline the other; and his refusal to act as executor did not operate as a renunciation of the trusteeship. Dunning v. Ocean Nat. Bank, 61 N. Y. 497; Judson v. Gibbons, 5 Wend. 224; Garner v. Dowling, 58 Tenn. 48; Pomroy v. Lewis, 14 R. I. 349; West v. Bailey, 196 Mo. 521; Mullany v. Nangle, 72 N. E. 385. (b) Even if he had refused the appointment as trustee made by the testatrix and immediately accepted the appointment as trustee by the court, when he accepted the appointment he had all the powers created by the will; for it is elementary law that it is the instrument creating the trust and not the appointment by the court that creates and defines the powers of the trustee. The appointment simply designates the individual who is to execute the powers that the testatrix has created. (2) The purpose of item 9 of the will was not to induce Henry Lutz to ob-

tain a divorce from his then wife; but its purpose was to provide, not for Henry Lutz, nor for any one else during his lifetime, but, in the event either after the death of or divorce from his then wife, he married a woman of good repute and left her as his widow, to provide for that widow after the son's death. Such a provision is valid. 40 Cyc. 1703; Thayer v. Speer, 2 Atl. 161; Coe v. Hill, 86 N. E. 949; Cowley v. Twombley, 53 N. E. 886; Ellis v. Birkhead, 71 S. W. 31; Ransdall v. Boston, 50 N. E. 111; Daball v. Moon, 91 Atl. 646. But even if the condition was void, this did not affect the legacy. Only the condition would be void and the legacy would take effect absolutely. Authorities supra; Knost v. Knost, 229 Mo. 177. (3) Henry Lutz did not directly or indirectly contest his mother's will; but if he had, the only penalty, under the will would have been to make void any gift or legacy to him. The will says so. In such circumstances a legacy to respondent or any one else is not affected.

WALKER, J.—Henry Lutz instituted suit in 1919, in the Circuit Court of Buchanan County, against the beneficiaries in the will of his mother, to have a trustee appointed to receive the estate from the administrator and to declare the true intent and meaning of the will and direct and supervise the administration of the estate. Schneider, the trustee named in the will, was not a party to the suit. On the death of Henry Lutz, the cause was revived in the name of his administratrix. In October, 1918, Effie Lutz, Henry's widow by his second marriage, filed an intervening petition praying that Schneider, the trustee appointed by the court, be ordered to pay her the monthly allowances of $200 conditionally provided to be paid to her by the will. The court adjudged that the accumulated monthly allowances of $6400 be paid to her and that they should thereafter be paid to her during her lifetime. From this judgment the defendant beneficiaries appealed. The appeal was transferred to this court by the Court of Appeals for the reason that the amount in-

volved exceeded its jurisdiction. [State ex rel. v. Reynolds, 256 Mo. 718; State ex rel. v. Reynolds, 245 Mo. 703.]

We quote so much of the opinion of TRIMBLE, P. J., as is necessary for the consideration of the case:

"In 1909 Theresia Lutz, a resident of Buchanan County, Missouri, died, owning real and personal property worth over $200,000, and leaving a will which was duly probated, in which she appointed J. G. Schneider executor and trustee without bond.

"After giving four legacies, one of $6000 and three of $5000 each, she devised all the balance of her estate to J. G. Schneider, as trustee, to manage the estate, invest and re-invest and make loans of the funds; and in the management of said estate, he was to be held to no accounting except to exercise good faith and judgment.

"Item 7 of the will directed the trustee or executor to pay, out of the income of the estate, the sum of $200 per month to testator's son, Henry Lutz, during the period of his natural life, and if at any time the said executor or trustee should be satisfied that he would not squander it, the son was to be advanced the additional sum of $5000 with which to engage in business, and in making such advancement the executor or trustee was to be held to account to no one, but was to be the sole judge of both the conduct and fitness of the son to receive said amount.

"Item 8 provided that if, in the opinion of the executor or trustee, the son settled down and showed himself capable of a prudent ownership and control of said estate and became a man of sobriety, a good citizen and of good business capacity (upon which matters the judgment of said trustee was to be final and conclusive), the trustee was empowered to convey and settle all of said estate upon said son, and in so doing and for doing the same the trustee was to be held to no accounting by any person whomsoever, if the trustee determined to so settle the same.

"Item 9 of said will is as follows:

" 'In view of the fact that my said son at this time is married to a woman, commonly known as Nora Sheldon who is generally known to be a woman not of good character, it is my wish and I direct that she be permitted in no way to share in my estate, excepting as she may incidentally share therein which I am unable to prevent while she is the wife of my son, and hence through him obtain the use of a portion of the annuity herein provided for him. Should she be the wife of my said son at the time of my death, or at the death of my son, no provision is to be made for her and she is to receive nothing from my estate. Should my said son at any time, even after my death, become divorced from her, or should she die before the death of my said son and if thereafter, that is, either after he is divorced from her or after her death he should re-marry, and if in the opinion of my executor or trustee herein named, who shall be the sole judge thereof, the person whom he then marries is a woman of good repute, then it is my will and I direct that the monthly payments hereinbefore provided for and directed to be paid to my said son during the period of his natural life, shall at the death of my said son upon like conditions and subject to the same limitations be paid to his said widow for the period of her natural life. And in the event that my said son re-marries and marries a woman of good reputation and one whom my said executor or trustee believes and by instrument in writing duly acknowledged declares to be such, and as above stated his judgment thereon is to be final and a condition precedent, and the further event that my said son leaves children other than by his present wife surviving him at the time of his death, then and at the termination of the trusts hereinbefore created my entire estate excepting that hereinbefore specifically given shall pass to and become the absolute property of such children or their heirs.'

"Item 10 provided that in the event the executor or trustee did not see fit to settle upon the son the balance of said estate, then the nephews and nieces of testatrix's husband were to receive the sum of $5000 each. There

are three of these, to-wit, the defendants, Bertha M. Imhof, Ferdinand Muhl and Theresia Lang, and this is the interest they have in this suit.

"Item 11 directed that the balance and residue of of said estate should go, one-third to testatrix's brother William and his heirs, one-third to the widow and children of testatrix's brother Barnhard and their heirs, and one-third to the heirs of her sister Cecelia and their heirs. These constitute all of the remaining defendants herein, and this is the interest they have in this suit.

"Item 12 authorized the trustee to appoint, by will, a successor to himself in the aforesaid trust, such successor to have all the powers given to the original trustee. Said item also provided that 'in the event that my said son Henry directly or indirectly contests this my last will and testament or commences any proceeding of whatsoever nature having for its object the setting aside of this my last will and testament, then all gifts, legacies, bequests and devises given or made to him herein are to lapse and the same are to become a part of my residuary estate and thereafter and forthwith he is to receive nothing whatever from my estate,' but in that event in order that he might not come to actual want, the trustee was empowered to make 'such advances to him from time to time as may seem to my trustee to be fit and proper for the purpose of providing him reasonably with the comforts of life, the amount of such advancements to be entirely discretionary with my said trustee, and in the exercise of his discretion my trustee is not to be held to any accounting by any person whomsoever.'

"At the time of Mrs. Lutz's death, Schneider, the trustee, was in Europe, and John L. Zeidler was appointed administrator. Upon Schneider's return, the son, Henry Lutz, opposed the powers given to Schneider under the will, and, in writing, requested Schneider to decline to act as executor or trustee under the will.

"Schneider for a while insisted that he was going to act, but finally an agreement was made that Zeidler should continue the formal administration and Schneider should

be appointed by the circuit court as trustee. Schneider, in the probate court, declined to act as trustee and executor under the will, and simultaneously with such declination to act he was appointed trustee in the circuit court, gave bond, and, with the exception of several thousand dollars left in the hands of Zeidler with which to close the administration, the estate was turned over to said trustee.

"The appointment of Schneider as trustee under the will by the circuit court was made in a suit instituted by Henry Lutz, on a petition filed by him wherein he was plaintiff and the defendants herein were made parties defendant, in which he set up said will and alleged that Theresia Lutz left no indebtedness, and the estate, with the exception of a sufficient sum with which to complete the administration, was to be turned over to the trustee, but before this could be done, 'it is necessary that a trustee should be named and appointed by this court to receive said estate and execute the trust created by said will of said Theresia Lutz, according to the terms and provisions thereof, as this court shall order and direct.' The petition then prayed the appointment of a trustee and that 'the court will declare the true intent and meaning of said will of Theresia Lutz, and direct and supervise the administrator thereof.'

"This suit is the proceeding now pending in court and in which the present appeal was taken; and the above mentioned petition is the original foundation of said suit. Schneider was appointed trustee as hereinbefore stated under said petition and received the estate before service was completed on the defendants.

"Upon taking charge of said estate Schneider began paying the son, Henry Lutz, the $200 per month provided for in the will.

"On the 16th day of February, 1911, Henry Lutz's wife, Mary (being the one mentioned in the will), obtained a divorce from him in the Circuit Court of Jackson County, Missouri.

"Thereafter, the defendants Rosina Hund, William Hund of Pueblo, Colorado, Theresia Schoukowitch, and William Essenman filed their separate answer and cross-bill to the petition of Henry Lutz, in which answer they admitted the will, enumerated the various provisions thereof with their alleged legal effect, and alleged that Schneider was by will appointed trustee. The answer set up that the estate attempted to be bequeathed to Schneider was worth upwards of $200,000, and that Schneider, by his declaration to act in the probate court, had renounced the powers and duties attempted to be conferred upon him by said will and had refused to exercise them under the will; that such powers were personal in their nature, and involved the exercise of the individual discretion and judgment of said Schneider, independently of the control or supervision of any other authority, and that by reason of his declination and his refusal to accept or act the powers aforesaid never came into actual existence, and never vested in him, but were utterly destroyed and could not be revived or conferred upon any person, nor could the court cause a performance of such powers or substitute its judgment and discretion for those directed to be exercised by said will; that the object sought by the petition was in violation of the letter and spirit of the will, in that it seeks to control and question the judgment of the trustee and to get around those provisions of the will in regard thereto; that as a part of the general plan and scheme of setting aside those provisions of the will and to defraud the answering defendants of their rights and to secure a settlement of the estate upon himself, the plaintiff fraudulently procured a pretended divorce from his wife, which was purely fictitious and null and void; that the plaintiff had no interest in the estate, because he had commenced the suit to avoid the provisions of the will by having judgment and discretion of some other authority substituted for the judgment and discretion of the trustee, and to control the latter, and, therefore, under the terms of the will, the gifts, devises, bequests and legacies made to the plaintiff had lapsed and fallen into

residuary estate; that because of all the facts the estate could not be settled on plaintiff and the possibility thereof had been destroyed, and that, by reason of all the premises, the residuary estate had vested in the persons named in items 10 and 11 of said will, and the answering defendants have become entitled to one-third of the entire estate subject to the payment of the specified legacies, which have been paid. The answer then set out a long list of real estate owned by the estate, none of which has been sold, and that there is now in hand more than $75,000 worth of personalty, and the estate should be divided, one-third to William Hund, one-third to the children of Cecelia Oser, and one-third to the answering defendants; that the latter are the owners in fee of an individed one-third interest in said real estate, but that plaintiff claimed an interest therein. The answer then prayed the court to order the immediate distribution of said estate; that 'the court ascertain and determine the estate, title and interest of the parties hereto, respectively, in said real estate hereinabove described, and to define and adjudge by its judgment or decree the title, estate and interest of the parties severally in and to such real property.

"Defendant William Hund of St. Joseph filed a separate answer admitting the will, stating that he is one of the beneficiaries under the will, and alleging that the contingencies upon which the trust fund might be turned over to the plaintiff Henry Lutz had not occurred and could not occur and that the plaintiff had no right in and to said trust fund, except the annuity to be paid to him during his natural life as mentioned therein. The court was then asked to construe the will and define the rights and interests of this defendant in the estate.

"The other defendants filed answer admitting the will and praying that their rights be protected.

"The son Henry Lutz, the original plaintiff herein, never reformed so as to be entitled to receive the estate, but on November 30, 1914, he married the intervening petitioner herein and died on the 31st day of March, 1918.

And, on April 13th, at the January, 1918, term of court, his death was suggested and his administratrix, Mary A. Williams, was made plaintiff in his stead, the cause being revived in her name.

"At the October term, 1918, Henry Lutz's widow filed her intervening petition, setting up the divorce of Henry Lutz's first wife, the intervening petitioner's subsequent marriage to him, his death without issue, and claiming that she, the intervening petitioner, was a person of good repute and entitled to the $200 monthly payments during her natural life, provided for under item 9 of said will. She further alleged that if she was and is a person of good repute the court should take proof of that fact and, independently of the opinion of the trustee, find and declare her to be entitled to said monthly payments; but that if the court should think that the trustee's opinion is material and necessary, then that the court would direct him to report in writing his opinion as to whether she was, at the time of her marriage and since has been, a woman of good repute; that the trustee declines to act in the premises without an order of the court. She therefore prayed that the trustee be required to report his opinion in writing, and that he be ordered to pay her the monthly payments already accumulated since the death of Henry Lutz, and also the sum of $200 each and every month during her natural life, as provided in said will.

"At the May, 1919, term of the court, defendants filed answer and cross-bill to the said intervening petition, in which they denied that intervener was the widow of Henry Lutz, alleging in substance that the divorce procured by his former wife was fictitious, fraudulently procured and void, and that they lived together as man and wife for many years thereafter, and that the provision of item 9 relative to the divorcing of Henry Lutz was illegal and it would be contrary to public policy to allow intervening petitioner to profit thereby. The answer then set up the refusal of Schneider to act under the will, as hereinbefore set forth, and alleged that there-

by the authority and powers conferred by the will could not be exercised, nor had the court any power to exercise them for the trustee or to direct him to make any investigation as to the character or repute of said Effie Lutz. The answer further set up that Henry Lutz had directly and indirectly contested said will and his rights had ceased, as alleged in their other answer, which they made a part of this answer.

"The defendants also denied that intervener was a woman of good repute at the time of her pretended marriage to Henry Lutz, and charged that she was then, for a long time prior thereto, and ever since has been, a woman of bad character and repute.

"At the October, 1919, term, intervening petitioner filed a motion stating that she believed Schneider was of the opinion that she was and is a woman of good repute, but that he had not formally indicated his opinion but 'should do so in a binding and permanent form so that the fact may be firmly known and established.' The motion referred to her intervening petition and asked for a rule on Schneider to investigate and report his opinion.

"The court at said term heard said motion and ordered Schneider to report at the next (May) term 'whether the said Effie M. Lutz, the widow of Henry Lutz aforesaid, was at her marriage with him and now is a woman of good repute.' To this order defendants excepted and preserved the same in a term bill of exceptions.

"At the next term, Schneider filed a written report, under oath, the material part of which is as follows:

" 'Your petitioner has ascertained upon report that Effie M. Lutz was born in Little Rock, Arkansas, in 1879, and when a child moved to the State of Texas and lived at various points in Texas during her childhood and early womanhood, and finally located at Haskell, Texas, where Mrs. Lutz is said to have married one W. E. Sherrill. After about ten years of married life, Mrs. Lutz procured a decree of divorce from Sherrill at Dallas, Texas, where she then resided, and Mrs. Lutz was granted the

custody of her daughter, Patricia Sherrill. The custody of the son, William Sherrill, was divided between the parents, the son spending his winter months with his father and attending school, and spending the summer months with his mother. The son is about nineteen or twenty years of age; the daughter is younger.

" 'Mrs. Lutz claims to have moved to Denver about 1912, and for a number of years ran a rooming house at the time she met Henry Lutz, whom she afterwards married. From the best information obtainable I am informed that the marriage was not a happy marriage and that prior to the death of Mr. Lutz, Mrs. Lutz had brought a suit for maintenance; and I am informed that a settlement was reached between Mr. and Mrs. Lutz, by the terms of which he agreed to pay her some money in full of all claims for support. I am also informed that this agreement was not lived up to between the parties, and later Lutz returned to his home and again lived with his wife.

" 'On account of the fact that Mrs. Lutz is a resident of Denver and her circle of acquaintances is somewhat limited, it makes it extremely difficult for me to form a trustworthy opinion as to her moral worth at this time, and almost wholly impossible to make a satisfactory report as of the date of her marriage with Mr. Lutz. I have found no sufficient evidence and have no sufficient information which would justify me in making a report that said Effie M. Lutz was in any respect unworthy, and from the best information obtainable her associates have been worthy and decent people, and I have been unable to procure any information to the effect and my attention has not been called to any fact or act in the life of Mrs. Effie M. Lutz which in any wise should militate or does militate against the presumption of good conduct on her part.'

"At the October term, 1920, the cause was heard upon the intervening petition and the answers thereto, and the court rendered a decree, finding among other things, that Henry Lutz was lawfully divorced from his first wife,

302 Mo. Sup.—30.

was thereafter lawfully married to the intervening petitioner, that he died on March 31, 1918, leaving no children; and that Schneider, the trustee, had 'filed in this court a statement in writing wherein the said trustee stated under oath that in his opinion the petitioner, Effie M. Lutz, is and has been a woman of good repute.' It was thereupon adjudged that said Effie M. Lutz is entitled to receive from said Schneider, trustee, the sum of $200 payable monthly, beginning with the month of April, 1918, for and during the term of her natural life, and that the sums so due, beginning with the month of April, 1918, to and including the month of December, 1920, amounted to $6400; and it was thereupon adjudged and decreed that Effie M. Lutz have and recover said $6400, 'and that she also have and recover of said J. G. Schneider, trustee as aforesaid, and payable as aforesaid, the sum of $200 per month so long as she shall live, beginning with the month of January, 1921, together with her costs in this behalf expended and that execution issue accordingly.'

"From this decree the defendants have appealed."

I. Respondents insist that the appellants were neither necessary nor proper parties to the litigation which, counsel say, was entirely between the respondent and Schneider, trustee, and that they have no right to prosecute this appeal. It is not necessary to decide whether Schneider had such an interest in the litigation as would entitle him to the right of appeal. He was not a party to the suit. So far as the record discloses, he did not voluntarily participate in the litigation, but was merely "a looker-on in Vienna." The appellants, however, include all the residuary legatees of the testatrix. It is not contended by respondent that they are not entitled to receive the residue of the estate after satisfaction of her demands. Under Section 1469, Revised Statutes 1919, any party to a suit aggrieved by the judgment of the court is entitled to an appeal unless it is prohibited by the Constitution. The contention is overruled. [Schee v. Boone, 295 Mo. 212.]

Right to Appeal.

II.  Appellants contend that Schneider refused to
act as trustee under the will and that power to
exercise the discretionary powers conferred by
the will, being personal to him, became ex-
tinct and could not thereafter be exercised by
Schneider, by any court, or by a substituted
trustee.

*Personal Trustee: Exercise of Powers: Acceptance.*

By item 1 of the will, Schneider was appointed ex-
ecutor thereof.  After making certain specific bequests,
the testatrix, by item 4, devised all the residue of her
estate to J. G. Schneider, in trust, as stated in the opinion
of the Court of Appeals.

The will created a spendthrift trust for the payment
of $200 per month to her son Henry during his lifetime.
In the event he and his then wife should be divorced or
the wife should die and he should marry a woman of good
reputation, of which the trustee should be the sole judge,
and she should survive the testatrix's son, the trustee was
charged with duty of paying the widow the like monthly
allowances during her lifetime.

That these personal discretionary powers cannot be
exercised by a court or by another trustee substituted
by a court is not only conceded by respondent, but is un-
doubtedly the rule recognized by the courts and text-
books.  [Jones v. Jones, 223 Mo. 450; Hazel v. Hagan,
47 Mo. 281; Ames v. Scudder, 11 Mo. App. 168; Kerens
v. St. Louis Union Trust Co., 223 S. W. 645; 1 Perry on
Trusts, secs. 273, 276a; Hinson v. Williamson, 74 Ala.
180; Belote v. White, 2 Head (Tenn.) 703; Whitaker v.
McDowell, 82 Conn. 195; Young v. Young, 97 N. C.
132; Hall v. Harvey, 77 N. H. 82, 88 Atl. 97; Chandler
v. Chandler, 111 Miss. 525, 71 So. 811; Turnure v. Turn-
ure, 104 Atl. (N. J.) 293; 31 Cyc. 1101; 40 Cyc. 1768.]

The rule is thus stated in 40 Cyc. 1768: "Where
a trust is created in a will by words which clearly indi-
cate that the testator placed special confidence in the
trustee named, so that the element of personal choice or
selection is found, then the execution of such a trust
must be confined to the person or persons thus selected."

And in 31 Cyc. 1101: "Where the power is conferred upon the donee as a matter of personal trust or discretion, it cannot be exercised by the court or by a new trustee."

Again, in Hinson v. Williamson, 74 Ala. 180: "The rule, moreover, is unquestionable, that powers which imply personal confidence in the donee, when conferred by will, can be exercised alone by the person or persons in whom such confidence is reposed; and if they disclaim, or refuse to exercise the trust, the power will be considered as revoked and absolutely annulled." [Citing Perry on Trusts, 273; Cole v. Wade, 16 Ves. 44; Wilson v. Pennock, 27 Pa. St. 238.]

In 1 Perry on Trusts, sec. 273, it is said: "If a person appointed a trustee effectually disclaims, it is as if he had never been named in the instrument."

Where the power conferred is personal and discretionary, the rule invoked, and the reasons underlying it, forbid the substitution of a different person as trustee.

It is clear that Schneider knew of his appointment. The law presumes his acceptance until the contrary is proven. [1 Perry on Trusts, sec. 259.] It becomes important to determine whether he accepted the trust or unequivocally refused to execute it. We quote from the abstract of the record:

"It is agreed that the following statement of C. F. Strop shall be taken as the facts in relation to the matters covered by said statement:

"Judge C. F. Strop: At the time Mrs. Lutz died J. G. Schneider was in Europe and Mr. John L. Zeidler was appointed administrator by the probate court. When Mr. Schneider returned from Europe the will was presented in the probate court. I am not sure whether at this time the proof had been offered to sustain the will in the probate court, or had not been offered. In any event, upon Mr. Schneider's return, Mr. Pike and Mr. Lutz vigorously opposed the powers given to Mr. Schneider by this will, and both verbally and in writing re-

quested Mr. Schneider to decline to act as executor under the will, or trustee under the will. Mr. Pike was attorney for Mr. Henry Lutz.

"Mr. Schneider for a while insisted that he was going to execute the powers delegated in the will, but finally an agreement was made that the formal administration should be continued by Mr. Zeidler, who had theretofore been appointed, and as part of the same negotiation it was agreed that Mr. Schneider should be appointed by this court as trustee in the circuit court of the estate of Theresia Lutz in the case of Henry Lutz v. William Hund et al., and Mr. Schneider, at the request of Mr. Lutz, declined to act. The order was made in this court appointing Mr. Schneider, and he filed in the probate court his declination to act as trustee and executor under the will and filed a writing to that effect; at least, when I say 'filed' I know he gave a written declination to Mr. Pike and Mr. Lutz, and I feel sure that was filed in the probate court, but in that I could be mistaken. My connection ceased with that part of it when Mr. Schneider declined to act. The estate was transferred to Mr. Schneider, who received it acting under this court, all of the estate except three or four thousand dollars. The estate in the probate court was continued under Mr. Zeidler's administration.

"I think there was a matter of four or five or six weeks that the negotiations were on whether there was going to be a contest in the probate court on any matter in the probate court before the agreement was made up here and Mr. Schneider's appointment was made in this court in effect simultaneously with the declination in the probate court and his refusal to act as administrator under the will."

It thus conclusively appears that Henry Lutz opposed the execution of the powers conferred on Schneider; that is, of acting as executor and trustee under the will; that Schneider, for a period of from four to six weeks, insisted on the execution of those powers; that.

finally a compromise was effected by which Zeidler should complete the administration and Schneider should be appointed as trustee in the circuit court in the action there pending, and that Schneider declined to act as administrator and executed his declination to act as trustee and executor under the will. This is modified by the concluding statement, that his appointment as trustee was simultaneous with his declination in the probate court to act as administrator under the will.

On this record, it cannot be found that Schneider refused to act as trustee under the will. For several weeks he insisted on acting as trustee and executor. The office of trustee was not merged in that of executor. [West v. Bailey, 196 Mo. 521.] Acceptance of the trust is presumed and may be shown by words or actions or by both. His insistence on executing the powers was an acceptance of his appointment as trustee (1 Perry on Trusts, sec. 261), and the title to the estate of the testatrix consequently vested in Schneider as trustee. He held the title in trust for all the beneficiaries named in the will, including a future wife and children, if Henry Lutz should have such. He could not subsequently disclaim or renounce his trusteeship, because the consent of the future wife could not be had.

In 1 Perry on Trusts, Section 268 reads: "If a person has once accepted the office, either expressly or by implication, it is conclusive; and he cannot afterwards, by disclaimer or renunciation, avoid its duties and responsibilities. And the reason is, that, if the estate has once vested in the trustee, it cannot be divested by a mere disclaimer, or renunciation, nor can he convey the estate against the consent of the *cestui que trust* without committing a breach of trust, unless the instrument creating the trust gives him that power, or unless there is the decree of a court to that effect. In such case the trustee may resign the trust, and convey the estate in the manner pointed out in the instrument creating the trust, if it speaks upon that subject; or the trustee may

decline the office, and convey the estate to a new trustee, by the agreement of all parties in interest, if they are competent to act, and consent to the arrangement. But if the parties do not consent, or if there are minor children, married women, insane persons, or others incompetent to act, a trustee, after he has once accepted the office, can only be discharged by decree of a court having jurisdiction, and upon proper proceedings had.''

After acceptance of a trust, a trustee may, with the consent of all the beneficiaries, resign his trusteeship. In 1 Perry on Trusts, sec. 285, it is said:

''But the trustee must see to it that all the *cestuis que trust* are parties to the transaction and concur; for, even in the case of a large number of creditors, each individual must act for himself, or he is not estopped, and the consent of a majority cannot affect the rights of one who did not concur. The trustee must also see to it that all the *cestuis que trust* are *sui-juris,* and not married women, infants, or other persons incapable of acting, or of no legal capacity to consent. For if there are such *cestuis que trust,* there can be no discharge and substitution of trustees without the sanction of the court, in the absence of a power in the instrument of trust; or if there may be parties in interest not yet in existence, as if the trust is for children not yet born, there can be no change of trustees by consent.''

III. If, however, there had been no acceptance of the trust shown, there was no unequivocal disclaimer. Schneider waived the administration with the distinct agreement that he should act as trustee under the appointment of the court, and take over and administer the trust. This was the understanding of the court as shown by its order on Schneider to inquire into and report as to the reputation of the intervener, Mrs. Lutz.

**Disclaimer.**

In 1 Perry on Trusts, sec. 270, it is said: ''But the parol expressions of a refusal of the trust, or parol evidence of conduct inconsistent with an acceptance, must

be unequivocal, and extend to a renunciation of all interest in the property; for if such refusal or conduct is coupled with a claim to the estate of another character, it will not amount to a disclaimer.''

From the foregoing considerations it is apparent that Schneider accepted the trust and could not, in the circumstances of this case, disclaim or resign his trusteeship and, there being no vacancy, his appointment by the circuit court was a nullity. [1 Perry on Trusts, sec. 277.]

IV. Item 9 of the will provides that if Henry Lutz should become divorced from his first wife and should re-

Trustee's
Discretion.

marry ''and if in the opinion of my executor or trustee herein named, who shall be the sole judge thereof, the person whom he then marries is a woman of good repute, then it is my will and I direct that the monthly payments hereinbefore provided for and so directed to be paid to my said son during the period of his natural life, shall at the death of my said son, upon like conditions and subject to the same limitations, be paid to his said widow for the period of her natural life.''

The discretion to be exercised in respect to the payment of the monthly allowances to the intervener, is a matter of personal judgment to be exercised solely by the trustee. The finding of the trustee that the intervener was and is a woman of good repute is a condition precedent to the gift. This discretion, however, must be exercised in good faith. A court cannot control the exercise of the trustee's discretion or decide upon the propriety or impropriety of his action in the absence of selfish, corrupt or improper motives, and the burden is upon the donee to prove such motives and not upon the trustee to show good reason for his action. [2 Perry on Trusts, sec. 508.] If the trustee shall be of the opinion that the reputation of the intervener meets the requirements and conditions of the bequest, he has the right and it is his duty to pay the monthly installments appointed to be paid to her on the conditions stipulated by the

testatrix in her will. As heretofore stated, the trustee is the sole judge thereof. Ordinarily his discretion cannot be controlled or exercised for him by the courts.

V. Appellants contend that paragraph 9 of the will is void as against public policy in that it offered an inducement to Henry Lutz to procure a divorce from his first wife. That is a perversion of the language of the will. The provision does not affect the payment of the monthly allowances to Henry during his lifetime, but in the event he and his wife should be divorced, or his wife should die and he should marry a woman of good repute and she should survive her husband, it provides a competence for her support after his death. The will anticipates and makes provision for future contingencies. If it had provided that Henry should have $200 a month during his lifetime, on condition that he should divorce his wife, such condition would be contrary to public policy and void, and Henry would have taken the legacy freed from the illegal condition. [Witherspoon v. Brokaw, 85 Mo. App. 173; Knost v. Knost, 229 Mo. 177.]

"The law will not sanction any testamentary provision which is intended or directly tends to bring about a separation of husband and wife; and if therefore the testator's purpose is to induce a future separation or divorce of husband and wife, the condition is void as against public policy, and the devise or legacy takes effect absolutely. But a devise or bequest may be so framed as to provide for one in case of a separation or divorce. If a testator makes a provision which is not intended to bring about a separation or divorce between husband and wife, but is intended to take effect in the case of a legal separation or divorce, the provision is valid." [40 Cyc. 1703.]

"The scheme of the trust no more tended to induce the son improperly to procure a divorce between himself and his wife than to induce him to procure her death." [Crawley v. Twombley, 173 Mass. 397, 53 N. E. 886, 46 L R. A. 164; Daboll v. Moon, 91 Atl. 646.]

The will further authorized the trustee to advance to Henry $5000 in addition to the $200 per month to enable him to engage in business if satisfied he would not squander it, and if, in his opinion Henry "shows himself to be a man of sobriety and good business capacity and also shows that he desires to become a good citizen," then the trustee was authorized to convey the entire estate to him. Neither of these contemplated benefactions was conditioned upon Henry's divorcing his wife. The testatrix clung to the hope of her son's reformation, in which event she provided he should have her entire estate (less certain specific legacies) even though the conjugal relations should continue between him and his then wife until death should them part. If, however, he should not embrace the privilege of becoming entitled to the $5000 or the residue of her estate, the testatrix provided, in case of her son's divorce from his first wife or her death and his re-marriage to a woman of good repute and she should be left a widow, that she, from the time of her husband's death, should be paid the monthly allowances, or, if the son left children surviving by the second marriage, they should receive the residue of her estate. There is nothing in the record to support appellant's contention that the legacy claimed by the respondent tended to disrupt the marital relations between Henry and his first wife. They lived together as husband and wife for two years after the death of testatrix when they were divorced at the suit of the wife. Four years later Henry met and married respondent. It is too tenuous a theory that a legacy provided, not for Henry, but for his widow by a future marriage upon the contingencies mentioned, should be construed as an inducement for Henry to divorce his first wife. The legacy in question was not to him, neither could he under any circumstances derive any benefit from it. Only upon his death could the legatee lay any claim to the benefaction. There is no merit in the contention.

VI.   It is further contended that respondent's rights obtained through her marriage to Henry Lutz have been dissipated if not destroyed by his inducing Schneider for a time to refuse to act as trustee.   This insistence is based on a proviso in item 12 of the will which voids gifts, legacies, bequests and devises to Henry Lutz should he directly or indirectly contest the will or commence any proceeding having for its object the setting aside of the will.   Whether he violated this condition of the will is immaterial; the legacy was not made to Henry Lutz but to the respondent.

Satisfied after a more mature consideration of this case following the oral argument of same in Court en Banc that the issues submitted have been fully determined in the foregoing opinion, a reversal is deemed unnecessary.

The judgment is therefore affirmed.   All concur, except *David E. Blair, J.,* who dissents.

Headnote 1:  **Appeal and Error,** 3 C. J. secs. 491, 511;  Headnotes 2, 6, 7 and 8:  **Wills,** 40 Cyc. 1768, 1703, 1704, 1705;  Headnotes 3, 4 and 5: **Trusts,** 39 Cyc. 78, 253, 254, 279, 316, 317.