250 S.W.2d 151 (1952)
In re SCHIELD'S ESTATE.
SCHIELD et al.
v.
PHILLIPS.
Nos. 42730-42732.
Supreme Court of Missouri, Division No. 1.
June 9, 1952.
Motion for Rehearing or to Transfer to Denied July 14, 1952.
*152 Maurice P. Phillips, St. Louis, for appellant.
William G. Guerri, James M. Douglas, Thompson, Mitchell, Thompson & Douglas, St. Louis, for respondents.
Motion for Rehearing or to Transfer to Court en Banc Denied July 14, 1952.
HOLLINGSWORTH, Judge.
These three cases come to the writer on reassignment. They originated in the Probate Court of the City of St. Louis and present the same issue: Whether under the facts hereinafter set forth that court was justified in refusing to allow David Baron, a licensed and practicing lawyer of the City of St. Louis, a fee of $17,500, or any fee, for legal services rendered the testate estate of William Schield, deceased, now in process of administration in that court.
The refusal of the probate court to allow the fee was based primarily upon its theory that the services rendered by Baron conflicted, or might conflict, with his duties as a testamentary trustee under the will of deceased, in violation of Rule 4.06 of the Supreme Court declaring it unprofessional for a lawyer to represent conflicting interests, except by express consent of all concerned given after a full disclosure of the facts. That court also deemed the fee excessive.
An appeal was taken by the executrix to the Circuit Court from the order denying her petition for the allowance of the fee. Separate appeals were also taken by both
*153 the executrix and Baron from an order of the probate court surcharging to the extent of $17,500 an annual settlement filed by the executrix wherein she had taken credit for that amount as a disbursement to Baron in payment of the fee. The probate court appointed Honorable Maurice P. Phillips administrator ad litem to represent the estate in the three appeals. At the trial in the circuit court they were consolidated and tried as one case. The circuit court found that the probate court erred in refusing to allow the fee and in surcharging executrix' settlement therewith, found that $17,500 was reasonable compensation for Baron's services, and rendered judgment accordingly. From the judgment rendered in the circuit court, the administrator ad litem has appealed to this court, where the three cases were also consolidated.
The testator, William Schield, was seventy-four years of age on the date of his death, August 8, 1946. He was survived by his widow, Jennie R. Schield, at that time seventy-two years of age. No children were born of their marriage. They maintained their legal residence in the City of St. Louis, but for many years Mr. Schield was a sufferer from sinus trouble and they spent much of their time in California where they maintained an apartment at the Fairmont Hotel in San Francisco.
David Bardon graduated from Washington University Law School and has been engaged in the active practice of law in St. Louis since July, 1916. He represented William Schield from 1928 until Mr. Schield's death in 1946.
Mr. Schield had retired and devoted his time to caring for his investments. He counselled with Baron about his investments and insurance matters, and from time to time told Baron that Baron would have to look after Mrs. Schield in case anything happened to him. Baron had drawn several wills for Mr. Schield, revised others, and drew the will involved in this case. During all of this time Mrs. Schield had also known Baron, and he was her lawyer. Mrs. Schield testified in circuit court that he still represented her personally and as executrix and had her absolute trust and confidence, and that her husband had suggested to her that she have Baron as her advisor and employ him as her lawyer after his, her husband's death.
The will, dated January 31, 1946, and witnessed by three resident citizens of San Francisco, California, was admitted to probate in the City of St. Louis on October 14, 1946. Mrs. Schield was named as executrix, with the further provision that in the event of her death, inability or failure to act, the Mississippi Valley Trust Company, William Henry Schield, a nephew, and David Baron were to act as substitute coexecutors. However, Mrs. Schield qualified as executrix and has continuously served in that capacity.
The will left testator's entire estate, after payment of debts, to three trustees: Mississippi Valley Trust Company, William Henry Schield and David Baron. They are directed to pay the entire income of the trust estate to Mrs. Schield so long as she shall live, except that certain of the income shall be paid to certain named relatives in the event the net annual income exceeds $15,000. The trustees are authorized to encroach upon the corpus of the estate for Mrs. Schield's benefit. Upon Mrs. Schield's death, they are directed to distribute $20,000 to testator's brother, Henry Schield, should he survive her, otherwise the legacy is to lapse; $25,000 to a sisterin-law, Frances Marshall, but if she shall have predeceased Mrs. Schield, then that amount shall be paid over to the Bureau for Infirm and Aged Israelites in St. Louis, Missouri; $3,000 to each of five named persons and $5,000 to another, if they shall not have predeceased testator or his wife. The specific legacies, except legacies of income, are subject, however, to a pro rata reduction if the distributable estate is less than $300,000.
Subject to the aforesaid specific legacies, the entire residuary estate is to be distributed by the trustees upon the death of Mrs. Schield to the following named persons in these proportions: Frances Kaufman Gaggstatter, a niece, 25%; Jack J. Kaufman, nephew, 20%; Marjorie Kaufman Bloom, niece, 15%; Bessie Kaufman Apte, niece, 15%, William Henry Schield, *154 nephew, 15%; and Rosalind R. Meltzer, the former widow of his wife's son, 10%.
The will further recites that testator's wife has preferred to forego her statutory and marital rights and has concurred in the terms thereof, but further expressly states "she shall be entitled to receive her statutory allowance for one year's support * * *." Prior to Mr. Schield's death Mrs. Schield, in a separate written document, declared her intention to take under the will, and after his death she elected so to do.
The inventory value of the estate was $857,531, and the Missouri inheritance tax appraisal value was $864,486.06. There was, however, a secured indebtedness of $185,000 to the Mississippi Valley Trust Company.
Following Mr. Schield's death in California in August, 1946, Mrs Schield immediately telephoned Baron and requested him to come to California to take charge of matters, with which request Baron complied. He remained in California from August 20th to September 3rd, winding up Mr. Schield's affairs. He caused the will to be filed in the Probate Court of the City of St. Louis on August 28, 1946, and had a commission issued to California for the testimony of the attesting witnesses. The California authorities asserted that the estate should be administered there. After numerous conferences with these officials and furnishing them with adequate evidence that testator was legally a resident of Missouri at the time of his death, Baron convinced them of that fact and procured from them a waiver for the return of some $70,000 of securities kept by Mr. Schield in California.
Following the probate of the will on October 14, 1946, and Mrs. Schield's qualification as executrix, Baron, on the next day, wrote a letter to each of the residuary legatees in which he advised them he represented the estate of William Schield, set forth the substance of the provisions of the will and of the trust therein created, the names of the trustees, and enclosed a copy of the will. Receipt of that letter was acknowledged by all of the residuary legatees.
None of them raised any objection to Baron's representing the estate.
Baron has continuously represented the estate since Mr. Schield's death. He estimated he had devoted 650 hours of time in the performance of these duties. He took the testimony of the attesting witnesses to the will. He canvassed the banks and brokerage offices in San Francisco and found $70,000 of securities belonging to testator. His expenses in connection with the trip to California amounted to $377.78, which is included in his claim for a fee of $17,500. He supervised the inventory and appraisal of the value of the estate. In accordance with the provisions of section 462.450 RSMo 1949, V.A.M.S., and the express direction of the will, he prepared and presented the widow's petition for one year's support. This was allowed in the total sum of $30,000. Throughout the years since Mr. Schield's death, he has advised the executrix as to the various and many legal matters involved in the estate, attended to the verification of many claims arising in the State of California, the dealings in connection with the Mississippi Valley Trust Company's secured claim in the sum of $185,000, and prepared federal and state income tax and other tax returns for the years of 1947, 1948 and 1949, and the semi-annual and annual settlements of the executrix. His duties required him to examine numerous insurance policies on the testator's life in the preparation of federal and state tax returns and to hold many conferences with the Internal Revenue Department and the State inheritance tax appraiser.
During the course of the administration, Mrs. Schield brought up the matter of Baron's compensation. He suggested that $17,500 would be reasonable. She stated that sum was too low and suggested at least $20,000. At the trial in the circuit court she testified that she thought $17,500 was "very, very mild" and reasonable; she had expected to pay more. Baron prepared a petition for her to file in the probate court for the allowance of that amount.
Baron testified that when the petition was presented to the probate court for allowance, *155 the judge thereof, Honorable Glendy B. Arnold, told him if he would procure the approval of the six named residuary legatees to the payment of the fee it would be allowed. Baron thereupon obtained their consents. The separate consents of five non-resident residuary legatees stated that the legatee signing the same "does hereby approve the payment of $17,500 to David Baron, as attorney's fee in accordance with the petition of Jennie R. Schield, executrix of the estate of William Schield, deceased, for authority to pay an attorney's fee of $17,500 to David Baron." The resident residuary legatee and co-trustee, William Henry Schield, endorsed his consent on the petition.
Judge Arnold then took the position that Baron, being a co-trustee under the will, was representing conflicting interests and that the fee was excessive. He insisted that Baron send the residuary legatees a form of letter prepared by Judge Arnold. This letter would have advised them, in substance, that Judge Arnold was of the opinion the law did not permit Baron to act as attorney for the executrix without the consent of all the ultimate beneficiaries, for the reason that his duties as such attorney "might conflict" with his duties as trustee and that that fact legally disqualified Baron to act as attorney for the estate "even though no such conflict actually existed". Baron did not agree with the views expressed in the letter and refused to send it.
Numerous conferences ensued between Judge Arnold and Baron, until finally, as testified by Baron, Judge Arnold told him to go ahead and have the executrix pay the fee, which Baron did, considering the matter settled. In the meantime, the petition filed by the executrix for the allowance of the fee remained undisposed of on the docket until the executrix filed her annual settlement on December 9, 1948, taking credit for the fee. A copy of this settlement was sent to each of the residuary legatees, and they approved it in writing, copies of which were delivered to Judge Arnold.
Notwithstanding the fact that all of the beneficiaries under the will (with the exception of the specific and contingent legatees whose interests we will discuss later herein), all of whom are competent adults with full knowledge of all the facts, twice consented to the payment of Baron's fee, Judge Arnold surcharged the annual settlement with the amount of the fee and denied the petition for its allowance.
At the trial in the circuit court, four highly reputable attorneys of St. Louis, whose years of practice ranged from twenty-nine to forty-four years, testified that a fee of $17,500 for Baron's services was modest and reasonable. Three of them said $20,000 to $22,500 would have been reasonable. There was no evidence to the contrary, other than the testimony of Robert L. Ailworth, a lawyer employed in the legal department of the probate court as an assistant to Judge Arnold. He testified that for routine services of attorneys Judge Arnold had fixed the following schedule: 3% on the first $100,000, 2½% on the second, 2% on the third, and 1% on all in excess thereof. He admitted, however, that he doubted whether the services rendered by Baron in California should be considered routine.
Respondents have moved to dismiss the appeals on the ground the administrator ad litem is not an aggrieved party and hence not entitled to appeal; that the right of appeal is statutory and there is no statute giving him such right; and that inasmuch as the residuary legatees approved the allowance of the fee, and there are no creditors or minors or possible unborn beneficiaries, the administrator ad litem is not a "party to a suit aggrieved".
There is no statute authorizing probate courts to appoint an administrator ad litem for the purpose of appeal. Section 464.230 RSMo 1949, V.A.M.S., authorizes the appointment of an administrator ad litem when the qualified executor or administrator seeks to establish a demand against the estate, but obviously the attorney's fee here involved is not a demand within the meaning of the statute. However, probate courts are charged under the Constitution and statutes of this State with the duty of preservation and distribution of the estates of deceased persons and, while such courts have no inherent powers, yet the express *156 powers vested in them carry with them such corresponding powers as may be necessary to the proper exercise of their express powers. In re Claus' Estate, Mo.App., 147 S.W.2d 199, 203. In that case, an administrator ad litem appointed by the probate court to defend an appeal of that court's order in favor of the estate was not questioned, 147 S.W.2d loc. cit. 201.
It is apparent from the record in this case that the executrix, due to her belief in the legality and reasonableness of the fee, was not in a position to defend the estate against its allowance on appeal if it was either an illegal or excessive charge for Baron's services, and Judge Arnold had held it to be both. Under such circumstances, we have concluded that the probate court was empowered to appoint an administrator ad litem to represent the estate on appeal, so as to make it an adversary proceeding. See Smith v. Smith's Estate, 131 Mo.App. 201, 110 S.W. 662.
Appellant asserts the petition originally filed in the probate court for allowance of the fee (an amended petition was filed in the circuit court) was based upon an express contract, and that respondent can recover only on" quantum meruit. Even though the contract for attorney's fees provides for a specific amount, yet the estate can only be bound to pay the reasonable value of such attorney's services. In re Thomasson's Estate, 350 Mo. 1157, 171 S.W.2d 533; In re Carlin's Estate, 226 Mo.App. 622, 47 S.W.2d 213. But we do not think the original petitionand certainly not the amended petitionwas based upon a contract for any specific amount. The original petition recites Baron's services rendered and to be rendered and does state that executrix and Baron have agreed upon $17,500 as his compensation for services rendered and to be rendered, yet it further states "that a fee in the sum of $17,500 is a reasonable fee" for such services. The evidence shows that the greater part of Baron's services were rendered quite sometime before any discussion was had between him and the executrix as to the amount of his fee. Thus it is evident that the petition asks allowance of $17,500 on the ground it is a reasonable sum, and that the agreement to that amount is pleaded as an inducement and consent to its allowance. The contention is without merit.
Judge Arnold filed a memorandum opinion, which extends through twenty-one pages of the record, stating the theory upon which his decision was based. In that opinion he states that the questions for decision are:
"(1) Did Baron, by his acceptance of his client's employment, contract to perform duties which incapacitated him to act as trustee, in violation of Rule 4.06 of the Canon of Ethics of the supreme court?
"(2) After accepting that employment, did he actively represent conflicting interests?"
He further states: "All that is attempted here is to determine whether, at the time of his employment by his client, he had agreed to perform duties for her, in this court, which conflicted, or might conflict, with his duties, as trustee, in this court." His opinion closes with this statement: "Excepting his violation of Rule 4.06, Mr. Baron's services to his client have been honestly and faithfully performed. The estate, so far, appears to have been correctly and efficiently administered."
The specific legatees, whose legacies aggregate $65,000 if all survive Mrs. Schield, are the only beneficiaries who have not affirmatively consented to the allowance of the fee. It is true that their legacies are to be reduced pro rata in the event the estate for final distribution amounts to less than $300,000. Yet, that possibility is so remote it did not occur even to Judge Arnold; at least, he makes no mention of it in his opinion. His only demand upon Baron was that Baron advise the residuary legatees as above set forth. The record shows that $395,000 has already been paid over to the trustees and that an appreciable amount is yet to be paid over to them. Mrs. Schield is now seventy-eight years of age. It is highly improbable that the estate will have been reduced to less than $300,000 by the time of her death. Moreover, all of the persons named as specific legatees, including those contingent, are competent adults and the institution, the Bureau for Infirm *157 and Aged Israelites in St. Louis, named as a contingent specific legatee, is, we must presume, a competent entity, yet none of them questions any phase of the issues here presented. Surely, it would seem, they must know of this litigation.
In the first place, would the probate court have the right to deny Baron a fee for honest, faithful and efficient services rendered the estate because, in the opinion of the court, Baron, in so doing, disqualified himself to act as trustee? We think not. That court had no jurisdiction whatsoever over the trust estate or the trustees. Whether Baron, in representing the estate in administration, disqualified himself to act as trustee is completely beyond the jurisdiction vested in probate courts. Constitution of Missouri, Art. V, § 16, V.A.M.S. That function is vested exclusively in a court of equity. Bramell v. Cole, 136 Mo. 201, 37 S.W. 924. See also West v. Bailey, 196 Mo. 517, 94 S.W. 273. But, we pass to the merits.
At the time Baron rendered his services to the estate and was paid the fee therefor, he had not assumed any duties as trustee. Hence, he was not in fact representing conflicting interests. The most that could possibly be contended is that he was derelict in failing to assume his duties as a trustee. Even if this should be true, it would not defeat his right to compensation for services faithfully and beneficially rendered the probate estate. Moffett Bros. Partnership Estate v. Moffett, 345 Mo. 741, 137 S.W.2d 507; In re Thomasson's Estate, 350 Mo. 1157, 171 S.W.2d 553, 561; In re Pfiffner's Guardianship, Mo.App., 194 S.W.2d 233.
Appellant argues, however, that Baron must be presumed to have accepted the trusteeship upon probate of the will and that therefore he is chargeable with the performance of his duties as a trustee as though he had assumed them at that time, citing Williams v. Hund, 302 Mo. 451, 258 S.W. 703. In that case, one Schneider had been named as executor and testamentary trustee. He unequivocally refused to act as executor and, for a time, declined to qualify as trustee. Later, however, he was appointed by the circuit court as trustee under the will. One of the beneficiaries contended this resulted in his being a substitute trustee rather than a testamentary trustee, and precluded him from exercising certain broad discretionary powers given him in the will. This court held that the law presumed his acceptance of the trusteeship set forth in the will until he unequivocally renounced it; that the evidence showed he had not done so, and that he was, therefore, invested with the aforesaid discretionary powers. The statements made in that case are not applicable to the facts in this case.
Premising his argument upon the assumption that Baron's duties in the trust estate arose upon probate of the will, appellant makes these contentions: First, that the preparation and presentation by Baron of the widow's petition for a year's support was in conflict with his duties as a trustee; second, that Baron represented a conflicting interest in advising the widow as to her right to renounce the will; and, third, that in seeking an allowance for his services to the estate Baron is seeking to deplete the trust fund and to realize unjust profit therefrom.
Of the first contention: The right to a year's support is given the widow both by statute, section 462.450 RSMo 1949, V.A.M.S., and the will. There can be no conflict in complying with the statute and the provisions of the will in the procurement of a reasonable allowance for her. Her allowance for a year's support was a lawful charge against the estate prior to the vesting of any right in the beneficiaries. The amount allowed was approved by the probate court and no contention is made it was excessive.
Of the second: The record does not show that the widow sought, or that Baron gave her any advice on that matter. Baron testified he merely asked her if she wished to abide by the will, and she said she did. Both before and after the probate of the will she announced her intention to abide the will, and at the trial evinced complete satisfaction with her decision. She had the lawful right to so elect. Certainly, the beneficiaries could not object; they gained appreciably by her election.
*158 Of the third: Legal services rendered an estate in administration are by statute made a charge against the testator's estate, section 465.100 RSMo 1949, V.A.M.S., so long as they are reasonable and beneficial, section 484.030 RSMo 1949, V.A.M.S. Concededly, the services were beneficial. To the extent such charges are reasonable, they are a charge against the testator's estate, not merely the trust fund; just as much so as executor's fees.
Under the facts in this case, we do not believe that any duty imposed upon Baron as attorney for the estate, or his claim for a fee, or any action taken by him in behalf of, or counsel given to, Mrs. Schield, either as executrix or as the widow of testator, was in conflict with or adverse to the lawful rights or interests of any of the beneficiaries under the trust.
We have found no case dealing with the right of an attorney who has been named as a testamentary trustee to act as an attorney for the estate in the administration thereof. But it would seem clear, by analogy, that if an executor may lawfully act in the dual capacity as a testamentary trustee, and all the authorities we have found hold he may, then it follows that an attorney for an executor, whose duties are but to advise the executor as to his legal rights and duties, and whose services are honestly and efficiently performed, may also so act to the same extent.
The law is well settled that the office of executor and testamentary trustee are separate and do not merge though they may be conferred upon and exercised by the same person. In re Shelton's Estate, 338 Mo. 1000, 93 S.W.2d 684; Williams v. Hund, 302 Mo. 451, 258 S.W. 703; 21 Am.Jur. § 217, p. 493. "Where it becomes important to ascertain whether a person occupying the dual status of executor and trustee was acting in the one or the other capacity, it is ordinarily held that an executor does not change his status to that of a trustee until there has been a legal ascertainment and separation of the trust fund from the general funds of the estate, or until the administration has been completed, or distribution made." State ex rel. Richards v. Fidelity and Casualty Company of New York, Mo.App., 82 S.W.2d 123, 127. See also: West v. Bailey, 196 Mo. 517, 94 S.W. 273; In re Holmes' Estate, 328 Mo. 143, 40 S.W.2d 616, 618; Selleck v. Hawley, 331 Mo. 1038, 56 S.W.2d 387, 397.
At the time Baron performed the services herein complained of, there had been no ascertainment or separation of the trust fund from the general fund. There has been no violation of Rule 4.06.
The cases cited by appellant, In re Buder, 358 Mo. 796, 217 S.W.2d 563, 574; In re Parker's Estate, 200 Cal. 132, 251 P. 907, 49 A.L.R. 1025; and Moffett Bros. Partnership Estate v. Moffett, 345 Mo. 741, 137 S.W.2d 507, are readily distinguishable on the facts.
The fact that in accepting employment as attorney for the estate and in the performance of such services a conflict might have arisen, or might yet arise on final settlement, with Baron's duties as trustee is beside the point. Attorneys would be circumscribed beyond the bounds of reason if they could not represent clients whose interests might at some future time conflict with the interests of other clients. It is only when the situation arises that it becomes the duty of the attorney either to withdraw from the service of one or both clients or to make full disclosure to both clients and obtain their joint consent to his continuing to serve one or both of them, as the circumstances may require.
We have hereinabove set forth the services rendered by Baron. Four experienced attorneys testified that $17,500 was entirely reasonable compensation therefor. The trial court so found, and we fully concur in that view.
The record shows it was the wish of the testator that Baron act, first, as attorney for the estate and, thereafter, as a testamentary co-trustee. So far he has faithfully and lawfully done so.
The judgment of the circuit court is affirmed.
All concur.