In the Matter of the Estate of W. F. SHELTON, JR., RUBY SHELTON, et al., Exceptors-Appellants, v. HAL H. McHANEY et al., Executors-Appellants.—93 S. W. (2d) 684.

Division Two, April 23, 1936.

*Ward & Reeves, Noble & Bradley* and *Orville Zimmerman* for executors.

*Wayne Ely, Tom Ely, Jr., George Smith* and *Langdon R. Jones* for exceptors.

. COOLEY, C.—This case originated in the Probate Court of Dunklin County upon exceptions therein filed to the final settlement of the executors of the will of W. F. Shelton, Jr., deceased. The ex-

ceptions were filed by the beneficiaries of the trusts created by the will, who are the widow and heirs of said Shelton, and who will herein be referred to as exceptors. The defendants are the executors and testamentary trustees named in said will. We shall refer to them as the executors. The probate court overruled all the exceptions and the exceptors appealed to the circuit court of said county. That court overruled three of the four exceptions filed; viz., exceptions Nos. one, three and four, sustained exception No. two, and rendered judgment accordingly. Both parties appealed, exceptors from the judgment denying exceptions Nos. one, three and four and the executors from the judgment sustaining exception No. two.

W. F. Shelton, Jr., died testate, leaving a large estate. The personal property aggregated over $400,000, and there was a large amount of real estate. He made a few comparatively small specific bequests and left the bulk of his estate to three trustees, to hold and manage for the benefit of his wife and children. The trustees named are his brother, Lee Shelton, Hal H. McHaney and A. J. Langdon, Jr. The same three men are by the will named as executors. They qualified as executors and as such administered upon the estate. At the close of the administration, about fourteen months after Shelton's death, they made final settlement in the probate court and, as executors, turned over the property of the estate to themselves as trustees. To their final settlement as executors the widow and children filed in the probate court the exceptions which give rise to this action.

The first exception relates to an item of $18,007.91, an allowed demand, disbursed to the W. F. Shelton, Jr., Store Company, a corporation in which the Shelton estate held about three-fourths of the stock, and particularly to an item of $3,000 paid to Hal H. McHaney and claimed to have been included in said $18,007.91. The evidence shows that said $3,000 was in fact paid by the store company to McHaney for services as attorney and secretary. Said exception alleged that the $3,000 was paid by the executors and included in the $18,007.91 item. That contention is not supported by the evidence and has apparently been abandoned. It is not briefed here and need not be given further notice.

The second exception relates to a credit of $600 taken by the executors for salary alleged to have been paid to a stenographer. That exception was sustained by the circuit court and the credit disallowed, which ruling is the basis of the executors' appeal herein.

The third exception relates to a credit of $253.65 taken by the executors for traveling expenses. It, like the first, is not supported by the evidence, is not briefed here, and apparently has been abandoned.

The fourth exception, the one seriously urged here by appellant exceptors, reads as follows:

"Fourth Exception. The exceptors further except to the credit for $20,540.18, referred to as executor's fees, calculated at five per centum of the total property disbursed, for the reason that said credit violates the intent of the will under which the executors hold office and which office they accepted according to the terms of the will; that the will provides that they shall receive not more than ten per centum per annum of the net income per annum, and that the credit greatly exceeds the amount lawfully chargeable, and is excessive. The exceptors further except to said credit for the reason that under the terms of the will the testator set out that the compensation the trustees were to receive, and such terms were accepted by the executors, and that the intent of the testator was not that the executors should act in the double capacity of executors and trustees, so that when they act as executors merely in carrying out the terms of the will they are not entitled to compensation as executors of the will, when the intent of the testator was, and they were in fact, acting as trustees of the estate. The exceptors further except to the said credit of $20,540.18, executor's fees, for the reason that they included therein a commission of five per centum on monies wrongfully disbursed as set out in Exceptions One, Two and Three."

We take first the exceptors' appeal. It is apparent, we think, from their exception filed in the probate court, the above-quoted "fourth exception," that the controversy resolves itself into the question whether or not the executors, being also trustees, are precluded by the provisions of the will from charging and receiving the statutory five per cent commission *as executors*. The statute, Section 221, Revised Statutes 1929 (Mo. Stat. Ann., sec. 221, p. 142), allows to executors or administrators, "as full compensation for their services and trouble a commission of five per cent, on personal property and on money arising from the sale of real estate." The exception filed concedes, by necessary implication, that the commission was based upon the amount of personal property passing through the hands of the executors. It excepts to the credit claimed, "referred to as executors' fees, calculated at five per centum of the total property disbursed," for specific reasons stated. As clearly set forth in their exception, upon which the case was tried below, exceptors' contention is that the will in question limits the compensation of the executors and trustees, acting in both capacities, to ten per cent of the net income from the estate in any one year, and that, by accepting the executorship and the trusteeship, they in effect agreed and bound themselves to charge no more than said ten per cent; in other words, to waive said statutory five per cent executors' fees or commission. Assuming for the purpose of the case, but without deciding, that an executor, who

is also named as testamentary trustee in a will, may lawfully bind himself by agreement, express or implied, to waive the statutory executors' commission or to serve as executor for a less compensation, the question presented is, does the Shelton will so limit the compensation to be paid? This necessitates an examination of the will.

The first six clauses of the will have no bearing on the question. Clause seven, principally relied on by exceptors, reads in part:

"SEVEN. I give, devise and bequeath all the rest, residue and remainder of my estate, real or personal, and wheresoever situated, which I may own or have the right to dispose of at the time of my decease, unto my brother Lee Shelton of Kennett, Missouri, Hal H. McHaney of Kennett, Missouri, and A. J. Langdon, Jr., of Hornersville, Missouri, as trustees, to have and to hold the same in trust, nevertheless for the joint use and benefit of my wife Ruby Shelton, my son William Frank Shelton, III., my son Frank Joseph Shelton and my daughter, Miriam Claire Shelton, with the powers and authority and subject to the terms, conditions and provisions hereinafter set forth."

Said clause seven then sets forth at length the powers and duties of the "trustees named and their successors," which are quite broad and comprehensive, and concludes:

"A sufficient amount of the income derived from the trust estate, hereby created, during the first five (5) years after my demise, after deducting all taxes and expenses of administration, including reasonable fees for the services of the trustees herein named, provided the aggregate of such fees shall not exceed in any one year ten per cent (10%) of the net income from my said estate during such year, together with such part of the principal of my estate as in the absolute discretion of the trustees herein named may be necessary and/or advisable, shall be used by said trustees for the support, maintenance, education and care of the beneficiaries of this trust, during such five (5) year period, and same shall be paid to them from time to time in convenient amounts."

Clause eight of the will provides that at the end of the five-year period referred to in clause seven the trustees shall divide the trust estate into four parts, equal in value, and turn over to the widow, Ruby Shelton, one of such parts, to be her absolute property.

Clause nine provides for continuance of the trust as to the remaining three parts, one for each of testator's children, until they respectively reach the age of thirty years, at which times the *corpus* is to be given to them, if then living. The provisions as to each child are similar. So far as pertinent to the question before us it will suffice to quote one, paragraph (a) of said clause nine:

"(a) One of said remaining equal parts of said trust estate shall be held in trust by the trustees herein named, or their successors,

for the sole use and benefit of my son William Frank Shelton, III., until he reaches the age of thirty (30) years. During which time, said trustees, or their successors, after deducting from the income derived from his said part of said estate all taxes against his said part of said estate and expenses of administration of his said part of said estate, including reasonable fees for the services of the trustees based upon the income from his said part of said estate, not to exceed ten per cent (10%) of the net income derived from his said part of said estate, shall pay such part of the remaining income, or all of same, together with a part, or all, of the principal of his said part of said estate, as in the discretion of the trustees herein named, may be necessary or advisable for his support, maintenance, education and business needs, to my son William Frank Shelton, III., and same shall be advanced to him in convenient installments.''

Clauses ten to fourteen, inclusive, deal with the disposition of the trust estates in the event of the death or marriage of any of the beneficiaries before receiving his or her share, and have no bearing on the question of compensation to the trustees or executors.

Clause fifteen is asserted by exceptors to throw some light on said question, wherefore we quote it, and also, for like reason, clauses eighteen, nineteen and twenty:

''FIFTEEN. The general purpose and intention in creating the trust provided for herein, whereby the trustees are given broad, general powers and are substituted in my place and stead as nearly as practicable, has been done by me with the desire that during the first five (5) year period after my demise said trustees shall do everything possible, by careful management, to protect my estate from waste, which often occurs in the administration and distribution of estate, to the end that my estate may be gotten into the best possible condition for division among my beneficiaries by the end of such five (5) year period, as provided herein, and, also, for the proper care, maintenance, education and support of my beneficiaries in the way I deem best, during the periods their said property is entrusted as provided herein, and, also, the end that said estates will be better preserved for their ultimate enjoyment, use and benefit.''

''EIGHTEEN. I hereby nominate and appoint Lee Shelton and Hal H. McHaney of Kennett, Missouri, and A. J. Langdon, Jr., of Hornersville, Missouri, executors of this my will and trustees of each trust hereby and herein created, and I direct that no bond or other security be required of them to qualify them to act as such executors or trustees in the State of Missouri, or any other State.''

''NINETEEN. In the event of the death of any of said executors and trustees, I hereby direct that the surviving executors or trustees select, designate and appoint a successor to such deceased executor or trustee, and in the event of the resignation or refusal of

any of said executors or trustees to act, I direct and request that the executors and trustees herein named, or their successors, select, designate and appoint the successor or successors to such resigning and refusing executor or executors, trustee or trustees. In the appointment of succeeding trustees, it is my earnest desire that my wife, Ruby Shelton, if living, be consulted and advised with in such appointments.''

''TWENTY. I direct that the trustees herein named be paid a reasonable amount for their services rendered hereunder, not to exceed in the aggregate for all of said trustees, in any one year, ten per cent (10%) of the net income from said trust estates being administered for said year.''

The will nowhere mentions executors' fees or commissions. It does, in several places, in the clauses we have quoted, refer to the fees or compensation to be paid to the *trustees,* not fixing such compensation absolutely but limiting it to a reasonable amount, not exceeding ten per cent of the net income in any one year. The trust is to continue for the whole estate for five years and for the three-fourths going to the children for a much longer period. Exceptors argue that clause seven, limiting the fees of the trustees to an aggregate of not exceeding ten per cent of the net income in any year for the first five years, said five-year period including the statutory time for administration in the probate court, shows a clear intent on the part of the testator that the compensation thus specified shall be in full for all services rendered by the trustees, both in their capacity of executors and of trustees. They say that such conclusion is fortified by the provisions of clause fifteen, wherein the testator evidences his desire that the estate be carefully and economically managed and conserved, and also by clauses eighteen and nineteen, wherein, they say, the testator refers to ''executors *and* trustees'' conjunctively, as though he considered and treated the two offices, or capacities, as one. We do not so construe the will. As to clauses eighteen and nineteen, there is some conjunctive reference to executors *and* trustees, but they are also referred to disjunctively, indicating that the testator knew and expected that they would act in different capacities;—in one capacity as executors, in the other as trustees. To illustrate, in clause eighteen he names the three men to whom he had previously given the estate as trustees, to be *executors* of his will, as well as trustees of the trusts therein created, and directs that they be not required to give bond as executors *or* trustees. He created the trusts when, in clause seven, he gave the estate to the three named persons as trustees. In succeeding clauses, prior to clause eighteen, he prescribed at length and in detail the duties and powers of the trustees, and their compensation as trustees. Nowhere in the will, until we come to clause eighteen, do we find

mention of executors. There the testator names as executors the same persons to whom he had previously given the estate as trustees. True, he there again names them as trustees "of each trust hereby and herein created," but that is mere repetition. He had already made them trustees and carefully and at length prescribed their powers and duties as such. It cannot be doubted that he knew the distinction between executors and trustees and knew that there would have to be *executors*, as distinct from trustees, to administer the estate in the probate court. Hence the request in clause eighteen that the persons named as executors and trustees should not be required to give bond as executors *or* trustees. The offices of executor and testamentary trustee are separate, though they may be conferred upon and exercised by the same person. [Judson v. Bennett, 233 Mo. 607, 651, 136 S. W. 681.] Testator undoubtedly knew this, as evidenced by his will, wherein he named trustees, prescribed their powers and duties, and then, later, named executors, carefully limiting the compensation to be paid the *trustees* but saying nothing about the compensation to be paid the executors, which, as presumptively he knew, the statute fixed. The statute, Section 221, supra, allows to an executor or administrator, a flat commission of five per cent on personal property, collected and disbursed to heirs, legatees or distributees. Sometimes it may be more, sometimes less, than the services required are reasonably worth. But such is the statute. If the services required of and rendered by an administrator or executor are not reasonably worth said five per cent the administrator or executor may not really earn all of his commission, but under the statute he is entitled to it. If such services are reasonably worth more, he is out of luck, for he cannot get more. It is not for us, as a court, to write the statutes. The statute fixes the compensation of executors and administrators. Before a person, named in a will as executor, can be held to'have agreed, expressly or impliedly, to waive such statutory compensation, we think such agreement should appear with at least reasonable certainty,—assuming still that such agreement may be lawfully made. In our opinion it does not so appear in the instant case. Generally speaking, persons, in making contracts, are presumed to know the law and to make their agreements in conformity therewith. The testator was, concededly, a man of intelligence and good business ability. He had accumulated a large estate. His will was not written hurriedly, but was carefully and well considered. Had he itended to limit the compensation to be paid to his executors and trustees, acting in both capacities, to the ten per cent of income specified in the will as compensation to the *trustees,* it would have been an easy matter to have said so. He did not say so, but instead said that the compensation of the *trustees* should not exceed said ten per cent, making no men-

tion of executors' fees or of fees or compensation to "executors *and* trustees" conjunctively. We think the will, in limiting the compensation of the trustees, clearly refers only to the compensation of the trustees, as such, and was not intended to include executors' commission, which is fixed by statute.

Exceptors complain of the court's refusal to give certain declarations of law requested by them at the close of the evidence. One, instruction or declaration No. 2, was on the theory that the executors were entitled to only ten per cent of the income from the estate in any one year. That has been sufficiently disposed of by what we have said above. No. 1 was to the effect that the executors were not entitled to commission "on any portion or part of the personal estate not disbursed in the administration of the estate by respondents as executors, and which remained at the time of the final settlement in the hands of respondents and shown to be of the value of $309,350.69." Another requested and refused declaration, No. 4, was that the executors were not entitled to commission on moneys derived from rentals on real estate.

It appears from exceptors' brief here that the complaint as to the refusal of declaration No. 1 is on the same theory as that relating to No. 2, viz., that the executors, acting in that capacity as well as trustees, were limited by the will to ten per cent of the net income, a contention which we have answered. In their argument exceptors seem to contend further that "disbursement" of such personal property as was not consumed by payment of debts and expenses was a mere "book transaction," in turning over the property by themselves as executors to themselves as trustees. Their exception filed in the probate court, however, seems to concede that it was a disbursement, within the meaning of the law. They except therein to the commission "calculated at five per centum of the total property disbursed." The property was "disbursed," though some of it was turned over in kind without being reduced to cash. In State ex rel. Peper v. Reynolds, 286 Mo. 126, 226 S. W. 550, commission was allowed on the value of corporation stock turned over by the executor to the legatee. If the executors and trustees had been different persons there can be no doubt that a turning over by the former to the latter of specific personal property, instead of reducing it to cash and turning over the proceeds, would amount to a collection and disbursement of such property within the meaning of the law, entitling the executors to their statutory commission. We cannot see that the fact that the same person is executor and trustee makes any difference. As executor he performs the functions of that office, collecting the assets, administering the estate in the probate court, and then turning over the remaining property to the person or persons designated by the will to receive it. As trustee, representing the beneficiaries

named in the will, he receives and takes possession of it. So far as concerns the executorship the estate has thus been fully administered.

As to refused declaration No. 4: Exceptors introduced in evidence the final settlement of the executors, filed in the probate court, from which appears certain items referred to as rents from real estate. No evidence was introduced to show by what authority the executors, as such, collected those rents, except that McHaney, called by the exceptors as their witness, testified that they took charge of the real estate pursuant to an order of the probate court. No objection was made to that testimony nor did the exceptors attempt to show, by the record or otherwise, that such order had not been made by the probate court properly and within its jurisdiction. But without further consideration of that question we think for another reason, said declaration No. 4 was properly refused,—and this applies also to refused declaration No. 1.

The exceptions filed in the probate court present the issues to be tried. The circuit court's jurisdiction, on appeal from the probate court, is appellate in its nature, and while it hears the matter *de novo*, it tries only the issues presented in the probate court and on which the appeal was taken. [See In re Harr & Harr's Estate, 224 Mo. App. 6, 22 S. W. (2d) 209; Branson, Admr., v. Branson, 102 Mo. 613, 15 S. W. 74; State ex rel. Burns v. Woolfolk, 303 Mo. 589, 596, 262 S. W. 346.] The exceptions filed in the probate court in this case do not present the issues sought to be injected into the case by said refused declarations Nos. 1 and 4. The only exception filed that could by any stretch of imagination be claimed to raise such issues is the fourth exception, above quoted. Exceptors quote the following portion of said exception:

"The exceptors further except to the credit for $20,540.18, referred to as executors' fees, calculated at 5 per centum of the total property disbursed, for the reason that said credit violates the intent of the will under which the executors hold office and which office they accepted according to the terms of the will; that the will provides that they shall receive not more than 10 per centum per annum of the net income per annum, and that the credit *greatly exceeds the amount lawfully chargeable and is excessive.*"

They emphasize the words we have italicized and argue that "this allegation includes reference to any unlawful or improper charge made by the executors." We do not think so. That part of the exception is to the whole commission and on grounds specifically and clearly stated, viz., that the will limits the compensation to ten per cent of the net income per annum and that for that reason the credit asked and taken is excessive. Any other construction would do violence to the language used in the exception. Moreover, empha-

sizing this as the meaning and the proper construction of the exception, in its closing sentence it says that said credit is excessive because it includes a commission of five per cent on three items specifically referred to, none of which have any reference to the matters embraced in said refused declarations 1 and 4.

Exceptors cite cases holding that courts will be liberal in construing pleadings, after verdict, "if by reasonable intendment, or by fair implication from facts stated . . . the essential allegation may be got at by inference." [Finley v. Williams, 325 Mo. 688, 29 S. W. (2d) 103, 104.] That rule is sometimes, where warranted, applied in support of a verdict or judgment. Here it is sought to be applied to strike down the finding and judgment. But in this case the "essential allegation" now urged by exceptors cannot be got at by "reasonable intendment or by fair implication from facts stated." On the contrary the only reasonable intendment and fair implication that can be deduced from the exception filed in the probate court is that exceptors complained of the credit taken for executors' fees on the grounds therein specifically stated. The contention that the executors had charged commission on items of alleged collection and disbursement (other than those specifically referred to) which, as executors, they had not (legally speaking) collected and disbursed, was not presented to or adjudicated by the probate court. The question, clearly presented, and the only question presented by the exception, was whether or not the will limited the compensation of executors and trustees, acting in the dual capacity of executors *and* trustees, to ten per cent of the net income from the estate in any one year. That question we have resolved.

■ Exceptors also allege error in the rejection by the court of certain evidence offered by them. They called as a witness a Mrs. Chapman, and by her offered to prove that, during the course of the preparation of the will, which occupied several days, the testator had told her "the entire expense of the administration of his estate would not be more than 10 per cent of the net income in any one year and that Mr. McHaney (who had written the will) had so told Mr. Shelton,"—and further that he was not putting the trustees under bond because their fees would be so small. They offered to prove by Mrs. Ruby Shelton (widow) that during the preparation of the will she said to her husband "Don't you think the administration or costs of administration under this will will be rather expensive?", to which he replied, "I don't know. The only costs of administration will be 10 per cent of the net income to the trustees and the law provides that any way."

Where the provisions of a will are ambiguous, proof of extrinsic facts may be admissible to aid the court in getting at the testator's intent. [See McCoy v. Bradbury, 290 Mo. 650, 235 S. W. 1047.]

We find no ambiguity in the will before us. The testator's intention is clearly expressed. Said oral evidence was properly excluded.

■ Exceptors further complain in their brief here of the allowance to the executors of an item of $680.09, for which credit was taken in their final settlement, for money paid to a farm foreman whom they had employed to look after the farms owned by testator. No reference, direct or indirect, to that item appears in the exceptions filed. It appears for the first time in the brief of exceptors here. For reasons above shown, this contention is disallowed.

*Of the Executors' Appeal.*

■ The circuit court sustained exception No. 2 and refused to allow credit for that item, being $600 alleged to have been paid by the executors to Miss Lois Sanders for stenographic services. The only evidence on this item was that of Mr. McHaney. His testimony shows the following:—At the time of Mr. Shelton's death, Miss Sanders was and for some time had been working for McHaney (a lawyer), as stenographer.—He was paying her $60 per month. After he qualified as one of the executors she continued in his employ at the same salary until about three months before the close of the administration period when he increased her salary to $65 per month. He did not say that the increase in salary was made because of extra work Miss Sanders was required to do for the estate. Possibly such inference might be drawn, because McHaney said his law business "fell off" during those fourteen months, though he did not say that was due to the time and attention he was required to devote to his duties as executor. During that fourteen months (the period of administration in the probate court) McHaney also acted as attorney and secretary for the Shelton Store Company, which owned, and leased or operated, several thousand acres of land, and for said services he received a fee of $3000. Miss Sanders did whatever stenographic work he required in that capacity, which must have been considerable. He also looked after lands belonging to "Shelton Brothers,"—lands owned in common by deceased, at his death, and his brother Lee. He made no specific charges for stenographic services rendered by Miss Sanders on account of either the Store Company, Shelton Brothers, or the executors. He did not pay Miss Sanders, *specifically,* for services rendered to or in behalf of the executors. He simply paid her her salary, first $60 per month, the same salary she had been receiving as his personal stenographer, until three months before the expiration of the administration period, and then $65 per month for the last three months, for *all* services she rendered him in the various capacities in which he was acting, including his private law business. He testified that during the fourteen months period he had paid Miss Sanders a total of $855, and he *estimated* that three-fourths of her time had been taken up

with matters pertaining to the estate;—hence the charge of $600. But the executors did not pay that $600 to Miss Sanders. McHaney had already paid it to her as part of her regular salary as his stenographer, and when it was allowed as credit to the executors, he simply kept it to reimburse himself.

We do not mean to hold that an executor or administrator may not legally employ a stenographer or other employee, to perform services conducive to the economical and proper conservation and administration of the estate which the executor or administrator himself cannot personally perform, and obtain credit for the reasonable compensation paid to such employee. But the evidence in this case does not justify allowance of said credit, and the circuit court was right in refusing to allow it. The judgment of the circuit court is affirmed. *Westhues* and *Bohling, CC.,* concur.

PER CURIAM:—The foregoing opinion by COOLEY, C., is adopted as the opinion of the court. All the judges concur.