**In the Matter of the ESTATE OF Lula DeGRAFF, Deceased.**

**No. WD 32376.**

Missouri Court of Appeals,
Western District.

June 22, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied Aug. 3, 1982.

Application to Transfer Denied
Sept. 13, 1982.

Morris B. Kessler, St. Louis, for appellant.

Edgar M. Eagan, Jefferson City, for respondent.

Before SHANGLER, P. J., and PRITCHARD and DIXON, JJ.

PER CURIAM:

The basic issue is whether the trial court erred in allowing respondent executor a $2,000.00 fee for his services in administering testatrix's estate, which consisted of a few dollars personal property and 85 acres of unimproved land in Callaway County.

The estate was opened in 1973. Delay was apparently occasioned by appellant heirs in resisting claims of testatrix's former guardian and his attorney for fees in that capacity, in several motions to remove respondent and orders for change of judge, three in all over the years, and an appeal by these appellants which was unsuccessful. See *Estate of DeGraff,* 560 S.W.2d 342 (Mo. App.1977). The claims of the guardian and his attorney were denied finally on January 30, 1979, and are therefore not in this case.

Respondent's testimony was that he had spent 119¼ hours at $25 per hour, plus $48 in mileage and $218.50 for subsequent services, for which he claimed a total compensation of $3,247.75. He admitted that he kept no records before August, 1974, and was only estimating the time, which reduced the total by about 33¾ hours to 85½ hours, which at $25 per hour would be $2,137.50. As noted, the court allowed $2,000 as respondent's fee. There is no basis for awarding an executor a fee based solely upon the time spent by him in administering the estate. It is provided by § 473.153, RSMo 1978, that the compensation of a personal representative shall be a fixed percentage of the value of personal property administered and of the proceeds of all real property sold under order of the probate court. It seems clear that respondent has done little over the years in administering the estate, but it is equally clear that the situation of delay has been largely due to appellant's several efforts to remove him as executor and in seeking successive changes of judges. It is also apparent from the record that the time spent by respondent has been in connection with the efforts to remove him, which would be for his personal benefit, and not directly to the benefit of the estate. There is no evidence that the reasonable compensation should be in excess of the statutory minimums. See *In re Cohn's Estate,* 237 Mo.App. 234, 163 S.W.2d 802, 804[1] (1942); and *In Re Shelton's Estate,* 338 Mo. 1000, 93 S.W.2d 684, 688 (1936), relating to the statutory compensation of executors and administrators.

The appellants contend that the trial court erred in ruling that respondent faithfully administered the estate in several respects. First, he failed properly to present and collect medicare benefits due the estate. Respondent's version was that these benefits were for the care of decedent in a nursing home, which he ascertained was not eligible therefor. Second, he failed to defend the estate against improper and illegal claims, these apparently being for the fees of decedent's guardian and his attorney. Respondent's version was that he wanted the court to decide as to those claims, which was finally done on January 30, 1979, upon the holding that they were not filed within 6 months of the order of publication. Third, he failed to file interim settlements. As noted, the estate consisted of realty, and the matters were in contention practically from the beginning. There was no absolute requirement that settlements be made until the real estate was disposed, there being no personal assets for which there should be an account. Also, since the estate consisted of realty, there is no merit in the contention respondent failed to marshall and conserve it, and there is no evidence of its waste or mismanagement. The court did not err in finding that respondent faithfully administered the estate.

Appellants say that the trial court was in error in finding that they caused an unconscionable delay in closing the estate. That finding is surplusage in that it would have no bearing on the amount of fee respondent is entitled to, especially in view of the finding that he faithfully administered the estate. They also say that the trial court erred in not allowing them a jury trial on the issue of respondent's fee. Section 473.153 1., RSMo 1978, provides that the basic fees allowable to a personal representative are determined by a percentage schedule of the property administered, and if there is an entitlement to a reasonable compensation, the *court* shall allow it. Sections 473.420 and 473.340 refer to jury trials, respectively, in cases of claims against estates and proceedings to discover assets. [Appellants erroneously refer to § 473.340 as providing for jury trials.]

In its findings, the trial court included $540.16 as costs in Circuit Court. It does not appear what this amount is for, or that it is in connection with the costs of administering the estate when it was lodged in the circuit court. Probably, it was for the costs of the transcript on appeal, awardable to the prevailing party under Rule 84.18, in the *Estate of DeGraff*, supra, and if so, it would not properly be chargeable as a probate cost. [In their brief, appellants say that this $540.16 was paid by them to the court reporter for the transcripts.]

By respondent's tendered settlement, early in the course of administration, the real estate was listed at $7,500. In his claim for allowance of executor's fee, filed September 19, 1979, he says that the real estate is worth "something in excess of $16,000." No other valuation appears, and the trial court did not attempt to set it for the purpose of allowance of an executor's fee as it was authorized to do under *Gilbreath v. Cosgrove*, 193 Mo.App. 419, 185 S.W. 1181, 1183[4] (1916). The more appropriate way to ascertain value is to proceed with the public sale as below directed.

The judgment is reversed and the case is remanded with directions that the trial court proceed with the public sale of the real estate as ordered; that the proper probate costs (which are unpaid) be ascertained; and that the respondent executor be allowed his statutory fee on the proceeds of the sale in accordance with § 473.153. Should appellants wish to retain the real estate, they may bid on it at the public sale, and thereafter pay into court the amount of compensation allowed respondent executor, and other costs of administration, after which the estate may be closed.