The BANK OF KANSAS CITY,
Personal Representative,
Appellant,

In the Estate of Mary
Goulding, Respondent,

v.

DISTRICT DIRECTOR OF INTERNAL
REVENUE SERVICE, Lorita M.
Thompson, Revenue Officer, Alma B.
Fisher, St. Luke's Hospital, and Jesse
Dillard, Respondents.

No. WD 38163.

Missouri Court of Appeals,
Western District.

Dec. 9, 1986.

Thomas Sullivan of Downey, Sullivan & Fitzgerald, Kansas City, for appellant.

I.R.S. acting as own attorney.

Rebecca L. Campbell, Independence, for Administrator ad Litem and C. William Kramer, Administrator ad Litem.

Before SHANGLER, P.J., and MANFORD and BERREY, JJ.

MANFORD, Judge.

This proceeding originated in the Probate Division of the Circuit Court of the 16th Judicial Circuit under a petition filed by the personal representative of an estate, seeking an order of the court approving the annual settlement, the final settlement, ratification of payment of gift taxes, and the discharge of the personal representative from any liability thereon. The judgment is reversed and the cause is remanded with directions.

Appellant presents four points which, in summary, charge that the probate court erred in its entry of a money judgment against appellant because (1) at the time the debts of the decedent were paid by appellant, appellant had no knowledge or information, either actual or constructive, of the existence of any gift tax liability; (2) payment of the debts was authorized by statute and at the time of payment, it appeared there were sufficient assets to pay all claims against the estate; (3) the evidence established that the payments and disbursements made by appellant were authorized by statute; and (4) neither the pleadings nor the evidence supports the judgment.

This case, as the following factual account reveals, is perhaps unique in the annals of our jurisprudence. Appellant is the personal representative of the estate of Mary Goulding, decedent. Mary Goulding died on April 5, 1984. Her will was admitted to probate in the Probate Division of the Circuit Court, 16th Judicial Circuit, on May 17, 1984. Letters Testamentary were issued to appellant's predecessor, Traders National Bank, on May 17, 1984. Appellant, now known as The Bank of Kansas City, was permitted to proceed in its capacity as representative under its new title, The Bank of Kansas City. Decedent's will directed payment of her debts and provided the residue be devised to appellant pursuant to the terms of a third revocable trust agreement executed by decedent on July 11, 1977. Even prior to decedent's death, appellant was the trustee of her revocable trust.

The decedent left surviving only two heirs, her grandsons. The grandsons were the principal beneficiaries under the trust. In the Goulding estate, the sole asset was accrued income from a separate trust of one Margaret Galbraith. The income totaled $15,150.00. Under the first settlement, the estate had increased to an approximate value of $30,000.00. Appellant paid from the assets of decedent's estate the court costs, burial expenses, expenses of administration, and other debts of the decedent.

As noted previously, appellant was also the trustee of decedent's trust. There had been modification of the trust agreement which directed appellant as trustee to obtain information relative to previous gifts made to the two grandsons. The purpose of this modification was to provide that appellant, upon final distribution under the trust, could make residual disposition more or less equal between the two grandsons. Appellant undertook compliance with the modification. Appellant discovered that gifts had been made in the past in such substantial sums that a federal gift tax was due. Until this time, neither the personal representative nor counsel for the personal representative knew of the gifts

made by decedent some five or six years previously.

During the present proceedings, counsel for the personal representative testified that although he had known decedent and had represented her personally for some time, had prepared her will and trust documents, and was acquainted with her grandchildren, he had no knowledge of the gifts made by decedent.

When the gifts of the previous five or six years were discovered, the personal representative prepared and submitted quarterly gift tax returns. These returns were filed September 24, 1984, for the quarters ending December 31, 1978, June 30, 1979, and December 31, 1979. Assessment by the Internal Revenue Service (I.R.S.) was set at $44,830.00. A $3,000.00 sum was paid to the I.R.S. by the personal representative from assets of the decedent's estate. The sum of $25,000.00 was paid the I.R.S. from the trust estate. This latter payment virtually exhausted the trust estate. A subsequent payment of $1,977.99 was paid the I.R.S. from the probate estate. This $1,977.00 payment exhausted the probate estate.

By September, 1985, the probate estate was exhausted and the trust estate had a minimal balance. The I.R.S. never has filed any claim in the probate proceedings. Three other claims were filed and were pending at the time of this proceeding. These claims were (1) an unliquidated claim of one Alma Fisher; (2) a claim from St. Luke's Hospital for $233.00; and (3) a potential claim from one Jesse Dillard for $252.00.

This proceeding was commenced by the personal representative. The petition alleged, in addition to other matters, that:

> [A]s the assets came into the control and possession of the personal representative, the funeral and burial expense of decedent, Mary Goulding, were paid, together with other expenses of her last illness and current indebtednesses, all as set forth and shown on the settlements filed herein, and as authorized by the Probate Code, as set forth in Section 473.403(2) and in Section 473.810.

The I.R.S., Alma Fisher, St. Luke's Hospital, and Jesse Dillard were named respondents in this proceeding. All of the respondents defaulted. They made no answer, entered no appearance, and did not attend the hearing. The probate court, upon the filing of the petition, entered an order designating the proceeding an adversary proceeding and directed notice of the hearing to be served upon all the respondents. The notices were sent by certified mail and verification of their receipt is upon the record herein.

As noted, the named respondents were in default and continued as such at the time of the hearing. At the hearing, specific, or rather almost exclusive, attention was directed toward the involvement of the I.R.S. Counsel for the personal representative testified to the following: Counsel first explained the discovery of the previous gifts and the remittance of gift tax payments to the I.R.S. He then testified that under the direction of the judge of the probate court, he prepared a letter wherein the I.R.S. expressed no interest in the matter and did not object to the discharge of the personal representative. Counsel testified of his repeated attempts to secure execution of the letter and/or some response from the I.R.S. After an appreciable lapse of time, counsel did receive a response from an attorney representing the I.R.S. This attorney, according to counsel's testimony, advised counsel that the I.R.S. would not sign the letter. The I.R.S. attorney also told counsel that the I.R.S. had received notice of the hearing, the I.R.S. would not participate, and that the I.R.S. did not object to the discharge of the personal representative. The I.R.S. attorney advised counsel that the I.R.S. would reserve any rights the I.R.S. might have against the personal representative, but the I.R.S. was making no objection to these proceedings. The foregoing was the only evidence upon the position of the I.R.S. It was uncontradicted.

The probate court entered its judgment, ruling that the personal representative had paid certain debts and accounts of the decedent not within classes one through four as prescribed by § 473.397, RSMo Supp. 1984, in the total sum of $3,898.30. These payments were for ambulance services, utilities, physicians' services, grave marker, personal servants, and reimbursement to the Mary Goulding Trust for funds advanced previously to pay debts of the decedent. The probate court then entered judgment against the personal representative in the sum of $3,898.30 on the premise that the personal representative had not distributed funds of the estate in accordance with § 473.397, RSMo Supp. 1984, which reads:[1]

**473.397. Classification of claims and statutory allowances**

All claims and statutory allowances against the estate of a decedent shall be divided into the following classes:

(1) Costs;

(2) Expenses of administration;

(3) Exempt property, family and homestead allowances;

(4) Funeral expenses;

(5) Debts and taxes due the United States of America;

(6) Expenses of the last sickness, wages of servants, claims for medicine and medical attendance during the last sickness, and the reasonable cost of a tombstone;

(7) Debts and taxes due the state of Missouri, any county, or any political subdivision of the state of Missouri;

(8) Judgments rendered against the decedent in his lifetime and judgments rendered upon attachments levied upon property of decedent during his lifetime;

(9) All other claims not barred by section 473.360.

The personal representative moved for a new trial. This was overruled. The personal representative then filed its notice of appeal to this court on March 14, 1986. Then, on April 8, 1986, the probate court issued its order appointing an administrator ad litem for this appeal. Appellant, in this court, then filed a motion to drop the administrator ad litem as a party, alleging the probate court was without jurisdiction to add a party on this appeal. Appellant's motion was, by this court, overruled. Just prior to oral argument before this court, appellant filed its motion to strike the brief of the administrator ad litem. That motion was ordered taken with the case for disposition.

Appellant's motion to strike the brief of the administrator ad litem is the initial matter for disposition. Appellant contends that the probate court had no jurisdiction to make such an appointment because the matter was, at the time of said appointment, within the jurisdiction of the Missouri Court of Appeals, Western District. Appellant relies upon *Millspaugh v. Akin*, 299 S.W. 596, 597 (Mo.App.1927) for the rule that additional parties may not be joined on appeal. Appellant further cites to *Aetna Life Insurance Company v. Litteer*, 621 S.W.2d 376, 379 (Mo.App.1981) for the rule that the adding of parties on appeal is different than the adding of parties before the trial court. This court, in *Litteer*, declared that absent the proof or suggestion of death, this court has no authority to add or substitute parties on appeal. In *Litteer*, this court was following the rule announced in *Millspaugh* that this court has no authority to allow an amendment of a petition by substituting parties on a pending appeal of a case.

The administrator ad litem counters by stating that *Litteer* does not apply because, "the estate of Mary Goulding was represented at the trial level by Appellant. After the judgment entry, however, the Probate Court determined that because of the judgment so entered, the estate was entitled to representation by an independent

**1.** Original judgment was entered on January 23, 1986. That judgment was amended on February 19, 1986, as to ratify payment of $4,977.99 to the I.R.S. by the personal representative for gift taxes and to authorize the personal representative to seek recoupment from the various payees. The original judgment and the amended judgment ruled that the final settlement shall not be approved until the payment of $3,898.30 was made.

administrator not prejudiced by the conflict of interest from which Appellant suffers."

The administrator fails to specify the alleged conflict of appellant. The administrator then contends that the probate court was authorized to make such appointment under the rule announced in *In re Schield's Estate*, 250 S.W.2d 151, 155–56 (Mo. banc 1952) and *In re Claus' Estate*, 147 S.W.2d 199, 203 (Mo.App.1941). While both *Schield's* and *Claus'* address the *express powers* of probate courts and declare that probate courts have no inherent power, this court fails to perceive how either *Schield's* or *Claus'* apply, let alone control. In *Schield's*, the appeal discussed was from the probate court to the circuit court under the procedure applicable before the constitutional reform of our judicial system effective January 1, 1979. Furthermore, in *Schield's* it is not entirely clear whether the appointment of the administrator ad litem occurred *after the appeal* was posted or such appointment was made during which time the probate court still had jurisdiction of the matter. In addition, in *Schield's*, the issue was a claim by an attorney (who was also the trustee under the will of the deceased) for attorney fees. Thus, the court reasoned that such appointment was within the "expressed powers" of the probate court, which vested "in them [and] carry with them such corresponding powers as may be necessary to the proper exercise of their express powers." Following that quote, the Missouri Supreme Court declared that in *In re Claus' Estate* at 203 "an administrator ad litem appointed by the Probate Court to defend an appeal of that court's order in favor of the estate was not questioned." All well and good, and there exists no inconsistency between *Schield's* and *Claus'*, but the fact remains that in *Claus'* as in *Schield's* that determination of when the appointment was made is not determinable. Two factors distinguish both *Schield's* and *Claus'* from the present case. First, it is not disclosed in either *Schield's* or *Claus'* as to the time of the appointment of the administrator ad litem. In the present case, such appointment occurred twenty-six (26) days *after* appellant

had filed its notice of appeal. Secondly, it is noted in *Schield's* that the court noted the issue of refusal of an attorney's fee by the probate court turned upon the belief of the probate court that the attorney had or might have had a conflict of interest. In *Claus'*, the issue was one of a surcharge against the settlement of the administrator of the estate.

■ The administrator ad litem and the probate court herein as well have incorrectly presumed that the relief sought by appellant places appellant in a position of a conflict of interest with the estate. That assumption is erroneous. Appellant sought approval from the probate court of a settlement, final settlement, ratification of the payment of gift taxes, and the discharge from any further liability in the estate. There was no question that the estate was exhausted. Appellant named as parties, the above listed respondents, all of which defaulted. The probate court, by a part of its order appointing the administrator ad litem, clearly describes what occurred. The probate court stated, "Although denominated an adversary proceeding by the court, the 'adversaries,' to the present time, have been the petitioner [appellant] and this court itself."

The probate court then acknowledged the default of the named respondents, but further disclosed that nobody represented the interest of the estate and then ruled, "Inasmuch as the case is now on appeal, the court finds that it is necessary for and in the best interests of the estate for the court to appoint an administrator ad litem to represent the estate." The court then cites to and relies upon *Schield's, supra.*

■ This court finds and rules that neither *Schield's* nor *Claus'* apply. It is further the ruling of this court that the probate court was without jurisdiction to appoint an administrator ad litem subsequent to the filing of appellant's notice of appeal and after the lapse of twenty-six days past the filing of appellant's notice of appeal. Pursuant to this finding and ruling, the brief of the administrator ad litem is strick-

en upon a finding and ruling that the administrator is not a proper party to this appeal.

Attention can now be directed to the merits of this appeal. It is obvious from the outset that the probate court assessed the sum of $3,898.30 against appellant herein and entered judgment thereon upon the firm belief that a gift tax liability remained, and the probate court must have assumed presentment of a claim by the I.R.S. for the collection of the tax would or could be filed. The probate court declared the following:

> Because of the insolvency of the estate and the size of the gift tax liability, any amounts remaining after the payment of the items described in subsections (1), (2), (3), and (4) of Section 473.397 must be paid to the Internal Revenue Service. Nevertheless, the petitioner paid the following claims, each of which was of a class lower in priority than the taxes due the United States:

| | |
|---|---|
| Baird, Kurtz and Dobson, accountants | $150.00 |
| Robert Allen, M.D. | 75.00 |
| Gas Service Company | 225.22 |
| Southwestern Bell Telephone | 328.54 |
| MAST Ambulance | 338.96 |
| MAST Ambulance | 194.89 |
| The Mary Goulding Trust, for amounts paid by the trust to various claimants, over and above the funeral expenses paid by the trust | 1,946.35 |
| Forest Hill Cemetery—grave marker | 387.34 |
| Jesse Dillard | 252.00 |
| | $3,898.30 |

> The Court is aware of the fact that the Internal Revenue Service neglected to appear at the hearing, and counsel for the Internal Revenue Service told petitioner's attorney that the Internal Revenue Service would not appear at the hearing and would take no position. However, such failure to appear and such statement to counsel for petitioner does not relieve either the personal representative or the Court of the responsibility for seeing to it that estate assets are distributed pursuant to the above-cited statutes. Therefore, the Court finds

and concludes that petitioner must reimburse to the estate the sum of $3,898.30, before its final settlement may be approved.

It is undisputed upon this record that the I.R.S. did not file any claim pursuant to § 473.403.1, RSMo Supp. 1984. That statute prescribes:

> **473.403. Allowance of claims—court's duties—allowance by personal representative**
>
> 1. Except as provided in subsections 2 and 3 hereof, no claimant is entitled to payment unless his claim has been duly filed and allowed by the court. Upon the adjudication of any claim the court shall allow it in whole or in part, or disallow it. The order allowing the claim has the effect of a judgment and bears interest at the legal rate, unless the claim provides for a different rate in which case the judgment shall be rendered accordingly.[2]

■ Thus, the following threshold question is presented: Is the I.R.S. a claimant within the meaning and purpose of § 473.403.1 and thereby bound by said statute so as to derive payment of its tax claims from an estate in probate? There appears no reason why the I.R.S. stands in any different relationship than all other claimants concerning this statute. It is therefore ruled that any tax claim made by the I.R.S. in any estate is subject to the provisions and application of § 473.403.1.

■ In the present case, the record also reveals that the I.R.S. has never submitted a claim in writing as is prescribed and required by § 473.380, RSMo Supp. 1984, and it must follow that any tax liability alleged cannot constitute a claim within the probate proceedings. It is also ruled that any claim alleged by the I.R.S. is also subject to § 473.380. The I.R.S. thus not having complied with § 473.380, has no claim upon which the probate court may act pursuant to § 473.403. It therefore follows that the I.R.S. has no standing as a "superior claimant" as is prescribed within

---

**2.** The exceptions noted in § 473.403.2 and .3     have no application herein.

§ 473.397, and the probate court simply misapplied § 473.397 to the present facts and circumstances.

The above analysis, standing alone, is sufficient to dispose of this matter, but this particular case involves yet another crucial question.

The evidence before the probate court was clear and uncontroverted that the I.R.S. *had not* and *did not intend to pursue any claim in the estate proceedings.* This is first suggested and supported by the above reference to the probate court requesting appellant to secure such a position of the I.R.S. in writing. The record relates the major effort to secure such written statement from the I.R.S. Then, at the time of the hearing, counsel for appellant testified, without objection and without any evidence to the contrary, that an attorney for the I.R.S. advised that the I.R.S. did not intend to pursue any claim in the estate and *the I.R.S. had no objection to the discharge of the personal representative.* The evidence also revealed that the I.R.S. reserved any rights it felt it had to separately proceed against the personal representative.

What is evident herein is that appellant, in good faith, thought there were sufficient funds to pay the debts of decedent and did render such payments excepting for the above specified claims. The tax liability then became known. There was absolutely no evidence that the personal representative knew or had cause to know of the pre-existing tax liability. Title 31, § 3713 U.S.C. provides that claims of the United States must first be paid when the assets of an estate are insufficient to pay all the liabilities of the estate. This has been construed not to impose liability upon a personal representative of an estate where it is established such representative had no knowledge or notice, either actual or constructive, concerning the tax liability. *Irving Trust Company,* 36 B.T.A. 146 (1937); *Want v. Commissioner of Internal Revenue,* 280 F.2d 777, 783 (2nd Cir.1960). *See also* Revenue Ruling 66–43, 1966–1 CB 291. The evidence herein clearly brings appellant within the above rulings and authorities.

It was a commendable gesture by the probate court in its insistence that appellant follow Missouri statutes, particularly § 473.397, however, in so doing under the particular facts and circumstances herein, such insistence simply was not necessary. It was evident that appellant acted in good faith, was without notice of knowledge, either actual or constructive, of the tax liability at the time other debts were paid, that the I.R.S. expressly refused to file a claim in the estate, and that the I.R.S. had no objection to the discharge of appellant as the personal representative of the estate. Under those facts and circumstances, well known to the probate court, it was error both to insist on compliance with § 473.391 as prescribed by the probate court and to have entered judgment against appellant for the sum of $3,898.30.

For the reasons set forth herein, the judgment of the probate court is reversed and this cause is remanded to the probate court with specific directions for further proceedings in accordance with this opinion.

So ordered.

All concur.